[S. F. No. 6668.   Department Two.—June 20, 1914.]

In the Matter of the Estate of PHOEBE W. DAUGHADAY, Deceased. JOHN H. GRADY, Petitioner, and Appellant; JOSEPHINE A. PHELPS, Contestant and Respondent.

ESTATE OF DECEASED PERSON—LETTERS OF ADMINISTRATION—PROPERTY OF ESTATE CONSISTING OF EQUITABLE DEMAND.—Where, under an application for letters of administration, it is made to appear that the sole property of the estate is an equitable claim or demand, the court in probate may treat such claim as property justifying the issuance of letters in advance of its establishment in a court of equity.

ID.—EFFECT OF DECREE GRANTING LETTERS.—In so doing, the decree of the court granting letters of administration will in no sense be considered an adjudication either upon the value or validity of the equitable demand, but will be an adjudication solely that the estate makes a *prima facie* showing of an equitable claim which justifies the issuance of letters of administration.

ID.—INQUIRY INTO NATURE OF EQUITABLE DEMAND—REFUSAL OF LETTERS WHEN DEMAND IS NOT REASONABLE.—The foregoing rules do not mean that any and every assertion of an equitable right demands of the court in probate the issuance of letters. While the court is not called upon to try, and will not therefore try, the question of the validity and enforceability of such an asserted equity, it is both its right and its duty to consider the nature of the asserted equity, at least to the extent of determining whether, if it be all that it is asserted, it may be made the subject of an equitable decree substantiating it and giving it legal validity, and it will deny letters of administration where the claim presented to it has not such reasonable and colorable value.

ID.—DISCRETION OF COURT IN GRANTING OR REFUSING LETTERS.—The court in probate has a real discretion in the matter of granting or refusing to grant letters testamentary or of administration. It will always grant such letters where administration is either necessary or advisable or desirable. But it will not grant them, in its dis-

cretion, where the purpose to be accomplished can be as well or better attained in another forum.

ID.—LETTERS OF ADMINISTRATION PROPERLY REFUSED—EQUITABLE CLAIM TO ATTACK SALE OF INTEREST IN ESTATE FOR FRAUD.—The deceased, on whose estate ancillary letters of administration with the will annexed were applied for in this state, was a resident of Kansas, where she died testate, and where her estate had been finally probated and the rights of all beneficiaries under her will decreed and determined. At the time of her death her estate consisted of an undivided interest in property in California belonging to another estate then and there in process of settlement. Pending the settlement of the two estates, the interest of the Kansas beneficiaries in the property in the California estate was sold under order of the Kansas court, the purchase price paid, the money distributed to them, and the Kansas estate finally closed. Subsequently, distribution of the California estate was had to the purchaser of the interests of the Kansas beneficiaries, and the decrees of distribution had become final. The petitioner for ancillary letters of administration in this state was an assignee of a very small part of the interest of one of the beneficiaries in the Kansas estate, and claimed that the sale of the interests of such beneficiaries in the California estate was procured by fraud of the purchaser, and that the equitable right to avoid such sale constituted property in California, to administer which he was entitled to letters of administration. *Held,* that the court did not abuse its discretion in refusing to issue letters of administration, and remitting the beneficiaries to the establishment of their rights by direct action in a court of equity.

ID.—PROBATE OF FOREIGN WILL—ESTATE OF TESTATOR MUST EXIST IN COUNTY WHEN ADMINISTRATION IS SOUGHT.—Section 1322 of the Code of Civil Procedure, touching the probate of foreign wills and providing that administration may be had in any county in which the testator shall have left any estate, means any county in which there shall be estate of the testator at the time administration is sought.

ID.—MCENERNEY ACT—DECREE ESTABLISHING TITLE IN DISTRIBUTEE OF ESTATE—FINALITY OF DECREE AGAINST BENEFICIARIES OF ESTATE—FRAUD IN DISTRIBUTION.—A final decree in an action brought under the McEnerney Act, establishing the title to land in a plaintiff claiming title under a prior decree of distribution in the estate of a deceased person, is as binding upon other persons claiming as beneficiaries of such estate as upon all the rest of the world. If the decree establishing title were obtained wholly upon the evidence offered by the decree of distribution, and the distribution itself had been secured by fraud, it would amount to nothing more than the introduction of fraudulent evidence in the trial of a cause, which fact would not militate in the slightest against the validity of the decree, nor be a ground for setting it aside.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a petition for the admission to probate of a foreign will, and the issuance of letters of administration with the will annexed thereon. Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

Thomas E. Curran, and Francis Dunn, for Appellant.

Ross & Ross, Walter H. Linforth, and W. C. Sharpstein, for Respondent.

HENSHAW, J.—Timothy Guy Phelps died testate. At the time of his death he was a resident of the county of San Mateo and his estate was probated therein. By his will he left a legacy of fifty thousand dollars to his widow, Josephine A. Phelps, and, in addition thereto, one-half of the remainder of his estate. The other half he apportioned amongst certain named relatives, leaving to them interests he designated as "shares." One of these relatives was a sister, Phoebe W. Daughaday, who was a resident of Kansas City, state of Kansas. She there resided until she in turn died testate in 1901. By her will she bequeathed her estate to her son, Frederick, and to the heirs of her deceased son, Mortimer. Her whole estate consisted of her "share" or interest in the estate of her brother, Timothy Guy Phelps. Her will was duly admitted to probate in the probate court of Wyandotte County, Kansas. Her son Frederick was appointed administrator of her estate. Notice to creditors to present their claims was published, but no claim was ever presented for allowance. Thereafter the administrator petitioned the probate court of Wyandotte County for leave "to sell and assign to Josephine A. Phelps all the right, title, and interest of Phoebe W. Daughaday, deceased, in and to the estate of Timothy Guy Phelps." In his petition the administrator alleged "that the estate of Phoebe W. Daughaday consisted of an undivided interest in the estate of Timothy Guy Phelps, deceased, of San Mateo County, California; that said estate consists largely of real estate and mining properties which it is impossible at this time to sell to advantage and that the income from said estate is not sufficient to pay the expenses thereof; that the heirs of Phoebe W.

Daughaday have received through your petitioner an offer of $3333.33 for their interest in the estate of Timothy Guy Phelps,' and that said heirs desire to accept the same and are willing to join in an assignment with your petitioner of their interest in said estate.'' A hearing was had upon this petition and the court in probate authorized the sale to Josephine A. Phelps of all of the interest of the estate of Phoebe W. Daughaday, her heirs and beneficiaries, in the estate of Timothy Guy Phelps, and ordered Frederick Daughaday, administrator, to join with the other heirs of Phoebe W. Daughaday in executing a deed and assignment of this interest. Pursuant to this order this instrument was executed by all the parties in interest under the will of Phoebe W. Daughaday. Thereafter the administrator filed his final account, showing his receipt of $3333.33 from Josephine A. Phelps, and showing further that after paying all debts and expenses of administration he had, pursuant to the order of the court, ratably distributed the remainder amongst the heirs and beneficiaries of Phoebe W. Daughaday's will. This final account was heard and settled and the probate court of Wyandotte County declared the administration to be at an end and discharged Frederick Daughaday from his trust as administrator. The estate of Phoebe W. Daughaday was thus finally closed on December 19, 1904. About eight months thereafter the superior court of San Mateo County, sitting in probate, in the matter of Timothy Guy Phelps, made its decree by which a portion of that estate was distributed to the widow, Josephine A. Phelps, the respondent herein. In 1907 the same court, sitting in the matter of the same estate made its decree settling the final account of the executrix and distributing the residue of the estate to respondent. This final decree declared: ''That prior to the 9th day of May, 1905, Josephine A. Phelps, the surviving widow of Timothy Guy Phelps, deceased, purchased of and from all of the heirs of said deceased, and of and from each and all of the devisees and legatees named and mentioned or referred to in and by the last will and testament of said deceased, and of and from all persons and each and every person interested in the estate of said deceased all of the right, title, interest, estate and claim of each and every one of said heirs, devisees and legatees and persons in and to the estate of said deceased, and in and to all of the property real and personal belonging to said

deceased at the time of his death or comprising any portion of his estate; and each and all and every one of said heirs, devisees, legatees and persons prior to said 9th day of May, 1905, granted, sold, assigned, transferred and conveyed to and vested in her said Josephine A. Phelps by good and proper and sufficient instruments in writing properly executed to her by them and each of them all of their and each of their rights, interests, titles, estates and claims in all of the real and personal property of the estate of said deceased, or owned by or belonging to said estate, or in which the estate of said deceased has any right, title, interest or claim without exception or reservation, and that said Josephine A. Phelps, as surviving widow of said deceased and devisee and legatee under the last will and testament of said deceased, and as grantee and assignee of all of the heirs of said deceased, and of all of the devisees and legatees under the will of said deceased, and of all persons interested in the estate of said deceased, is now entitled to have distributed to her all of the estate of said deceased, and all the property real and personal owned by or belonging to said estate, or in which the estate of said deceased now has any right, title, interest or claim without reservation and as fully as if an exact and particular description of all of the property, real and personal, of said estate and each and every interest therein was here fully and particularly described, mentioned and set forth.'' This final decree was never appealed from and has long since become final. On the ninth day of January, 1912, John H. Grady, appellant herein, filed his petition in the superior court of the city and county of San Francisco, setting up the death of Phoebe W. Daughaday, the probate of her will in Wyandotte County, Kansas, and alleging that she ''left estate in the city and county of San Francisco'' consisting of ''a certain interest in real estate vested in said deceased under the last will and testament of Timothy Guy Phelps, deceased.'' The petition further alleged ''That your petitioner is a person interested in the estate and in the will of said deceased, being the assignee and transferee of a certain interest from Frederick Daughaday, one of the devisees under the last will and testament of said deceased, and is entitled to have distributed to him said certain interest as assignee and transferee of said Frederick Daughaday.'' Respondent met this petition by a contest, setting out the matters of fact above recited, and alleging that Phoebe W.

Daughaday had not left any estate in the city and county of San Francisco subject to administration. (Code Civ. Proc., sec. 1322.) The petitioner, after his demurrer to this contest had been overruled, filed an answer which admitted all of the facts above set forth, but pleaded that the deed and assignment made by the administrator and other heirs and beneficiaries under the will of Phoebe W. Daughaday had been procured of them by respondent by means of fraudulent representations concerning the value of the interest of Phoebe W. Daughaday's estate in the estate of Timothy Guy Phelps, deceased, and by false representations concerning the condition of the estate and its administration "and by threats wrongfully made by said Josephine A. Phelps that steps would be taken whereby the interest of said parties and of said Phoebe W. Daughaday in said estate would be rendered valueless unless they assigned their interests to said Josephine A. Phelps."

Upon the hearing contestant fully and satisfactorily established all of the facts set forth in her contest, and in addition thereto showed, without conflict, that the only real estate owned by Timothy Guy Phelps in the city and county of San Francisco at the time of his death consisted of three lots, title to which had been quieted in respondent in an action brought by her under the McEnerney Act, the decree having been given on August 7, 1911. It was further disclosed at the hearing that no creditors of Phoebe W. Daughaday were involved in the controversy, and that the interest of John H. Grady, petitioner, consisted of an assignment from Frederick Daughaday, former administrator of his mother's estate, of "a one-thousandth part of all my right, title and interest in and to my share bequeathed to me by Phoebe W. Daughaday," which, upon the basis of the sale of that interest made by Frederick Daughaday to respondent, amounted to about $1.50. Petitioner, though not denied the opportunity so to do, offered no evidence concerning the asserted fraudulent nature of the transfer of the interest of the Phoebe W. Daughaday estate to respondent, but contented himself with introducing in evidence an answer which he as special administrator of the estate of Phoebe W. Daughaday had offered in an action to quiet title to certain lands in San Mateo County brought by Josephine A. Phelps, respondent herein, against him as such special administrator, which answer set up· the same matters

touching the fraudulent procurement of the deed and assignment to respondent as have above been stated. He also offered a proposed complaint in intervention in that action, which complaint in intervention was by the beneficiaries of Phoebe W. Daughaday's will and set up the same matters of fraud. He made no offer of evidence in support of any of these allegations contained in his answer or in the complaint in intervention.

The facts have here been stated with even more elaboration than is perhaps necessary for the discussion of this case, but it will save a repetition of them in the consideration of the appeal in No. 6677, (*Phelps* v. *Grady, post,* p. 73, [141 Pac. 926]), in which action the superior court of San Mateo County quieted the title of the plaintiff, Josephine A. Phelps, against the claims of appellant herein and of the beneficiaries under the will of Phoebe W. Daughaday, who sought in vain to intervene in that action.

With whatever may be its legal ramifications, the question in this case is whether or not Phoebe W. Daughaday left any estate in the city and county of San Francisco calling for administration. The assertion in the petition that she did leave such estate is controverted by the decree of final distribution in the estate of Timothy Guy Phelps as above quoted, which declares that Mrs. Phelps had acquired in the lifetime of Phoebe W. Daughaday all the latter's interest in the estate of Timothy Guy Phelps. However mistaken this decree may have been in fact, it stood and stands as a conclusive adjudication upon the question—an adjudication *in rem*—(Code Civ. Proc., sec. 1908, subd. 1) binding upon the whole world. If the finality of this decree were not attacked, or attempted to be attacked as it is here, upon the ground of fraud, it would require no discussion to support the declaration that the decree of final distribution was conclusive under these circumstances on the proposition that Phoebe W. Daughaday did not leave estate in the city and county of San Francisco, and that therefore there could be no reason for the issuance of letters of administration upon her nonexistent estate. But the answer of petitioner to the contest asserts that this decree was procured by fraud. We will not here stop to consider the sufficiency of these allegations as measured by the rules of pleading in a court of equity. Rather will we go to the essence of the proposition, which may be thus stated: Where, under an

application for letters of administration, it is made to appear that the sole property of the estate is an equitable claim or demand, should the court in probate (1) treat such a claim as property, justifying the issuance of letters in advance of its establishment or (2) should it await the action of a court of equity in establishing the validity of the asserted equity, or, finally, (3) should it, sitting as a court of equity, itself try the controversy, and as it determines it in favor of or against the asserted equity, so grant or withhold letters of administration? If the third view is the correct one, then the court's determination was perfectly proper, for, as has been said, no scintilla of evidence was offered to substantiate the assertions of fraud. If the second position is the sound one, then equally was the court correct, for its refusal to issue letters was in effect to send the petitioner into a court of equity to establish his asserted fraud. If the first proposition is the correct one, then it is to be considered whether the facts disclosed at the hearing presented a case demanding of the court the issuance of letters. Upon these three propositions we hold that the action of the court in probate should not be and is not governed by either the second or the third consideration. We need not discuss this matter with elaboration. It is sufficient to point out that in many cases it would work a hardship if an equitable claim were not recognized as property or estate sufficient to warrant the issuance of letters. Creditors might find it difficult, if sent into a court of equity to establish such a claim, successfully to do so. Heirs may be numerous, scattered, and of divergent views, which might make it difficult for them successfully to enforce the equity. As to the third suggestion, the court in probate should not be called upon to try a contested matter in equity, which arises in the probate court in a sense collaterally as the mere outgrowth of the primary question whether or not the decedent left estate, even if the court in probate, with its circumscribed jurisdiction, is not absolutely without power to try such questions. Yet, on the other hand, for that court to send the petitioner into a court of equity, there first to establish his claim, may result in very real and unnecessary hardship to those interested in the estate. These considerations compel the conclusion that, in proper cases and upon a proper showing that the property of the estate is an equitable claim, the court in probate should grant letters of administration. In so doing,

however, the decree of the court granting letters of administration will in no sense be considered an adjudication either upon the value or validity of the equitable demand, but will be an adjudication solely that the estate makes a *prima facie* showing of an equitable claim which justifies the issuance of letters of administration. This declaration, however, is not to be stretched to mean that any and every assertion of an equitable right demands of the court in probate the issuance of letters. While the court is not called upon to try, and will not therefore try, the question of the validity and enforceability of such an asserted equity, it is both its right and its duty to consider the nature of the asserted equity, at least to the extent of determining whether, if it be all that it is asserted, it may be made the subject of an equitable decree substantiating it and giving it legal validity, and it will deny letters of administration where the claim presented to it has not such reasonable and colorable value.

Herein the principle is the same (though its application is different) as that which governs the conduct and rulings of courts where one, declaring himself to be a public officer, seeks injunction against unwarranted intrusion and violent ouster at the instance of another claimant to the same office. The courts in such cases do not and cannot try the title to the office; but they inquire into the *status* of the complainant to the extent of determining whether he has such a colorable right to the office as to justify the law's protection of his possession until his adversary has by legal judgment established his own superior title and consequent right of possession. (*Scott* v. *Sheehan,* 145 Cal. 692, [79 Pac. 353].)

This discussion and this conclusion are manifestly predicated upon the concept that the court in probate has a real discretion in the matter of granting or refusing to grant letters testamentary or of administration. That discretion actually exists. True it is that in the vast majority of cases where such application is made, no occasion for its exercise arises, for in the vast majority of cases there are substantial interests to be subserved by administration. Creditors are to be paid, heirship determined, distributive shares fixed, construction of wills had, all resulting in the final decree of distribution, which affords a most valuable and conclusive muniment of title. So it may be said that the probate court will always grant such letters where administration is either necessary or

advisable or desirable. But it will not grant them, in its discretion, where the purpose to be accomplished can be as well or better attained in another forum.

Did the petition, then, in this case show such a reasonable and colorable equitable claim as to force the conclusion that it was an abuse of discretion for the court in probate to have refused letters of administration? As presented to that court the facts were that Phoebe W. Daughaday died in Kansas and was a resident of that state. Her estate was there probated, the rights of all the beneficiaries under her will decreed and determined. All of the interest which her estate had in the estate of Timothy Guy Phelps had been conveyed to Mrs. Phelps under order of the Kansas court. The sale had been effectuated, the price paid, the money distributed to the beneficiaries under the will of Phoebe W. Daughaday, and her estate was finally closed. This, in turn, was followed by decrees of partial and final distribution in the probate court of San Mateo County in this state, which decrees were made without opposition and have long since become final. If anybody was defrauded by these decrees it was not Phoebe W. Daughaday, who was dead; it was not this petitioner, who took a thousandth part of the one-half interest of one of the beneficiaries who joined in the conveyance to Mrs. Phelps. If fraud was practiced at all it was upon those beneficiaries. If those beneficiaries believe themselves to have been defrauded, they can one or all establish their rights by direct action in a court of equity in this state much more expeditiously than through the roundabout medium of ancillary administration upon the estate of Phoebe W. Daughaday. Still further it should be pointed out that section 1322 of the Code of Civil Procedure, touching the probate of foreign wills and providing that administration may be had in any county in which the testator shall have left any estate, means any county in which there shall be estate of the testator at the time administration is sought. But what is the situation here presented? It was shown in this case, as above pointed out, that contestant established title to herself in this very land by a decree in an action which she brought under the McEnerney Act. [Stats. 1906 (Ex. Sess.), p. 78]. That decree has become final and is as binding upon the Daughaday beneficiaries as upon all the rest of the world. It does not appear, and it matters not, whether that decree was based wholly or not at all upon the

evidence of the decree of distribution in the estate of Timothy Guy Phelps. If it were obtained wholly upon the evidence afforded by that decree of distribution, and if that distribution itself had been secured by fraud, nevertheless it would amount to nothing more than the introduction of fraudulent evidence in the trial of a cause, which fact would not militate in the slightest against the validity of the decree, nor be a ground for setting it aside. (*Bell* v. *Thompson,* 147 Cal. 689, [82 Pac. 327].)

From every point of view, therefore, the court rightly exercised its discretion in refusing letters of administration. Indeed we would be inclined to hold that it would have abused its discretion had it acted otherwise. For it is not within the contemplation of the law that the mere assertion of any claim, however visionary and unsubstantial, shall call for the issuance of letters of administration and to that extent give a form of judicial sanction to unfounded pretensions.

Wherefore the decree of the court is affirmed.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.