AMERICAN COLONIAL BANK & TRUST COMPANY OF P. R., Petitioner, v. DISTRICT COURT OF SAN JUAN, Respondent.

No. 1170. Argued November 14, 1939.—Decided October 29, 1940.

*Fiddler, Córdova & McConnell,* and *José G. González* for petitioner. *Henry G. Molina* and *S. de la Fuente* for the intervener judicial administrator.

Opinion of Mr. Chief Justice Del Toro in which Mr. Justice Hutchison concurs.

The discussion of this case has been a long and laborious one. The moment has arrived when it can not be further prolonged. I appreciate the force of the arguments set forth in the memorandum of Mr. Justice Travieso and of the statements made by Mr. Justice De Jesús, analyzing the law and all the cases cited by Mr. Justice Wolf and Mr. Justice Travieso during the discussion in conference, and the fact that an extreme case is involved.

Technically, the views upheld by Mr. Justice Travieso and Mr. Justice De Jesús may be correct; but taking into account the actual situation presented by the record, I think that the order sought to be annulled within the certiorari proceeding is inspired in justice and can be supported upon a liberal interpretation of the law and the decisions.

In my judgment, the presumption of correctness which attaches to the decision of the district court has not been overcome. Therefore, the writ issued must be discharged and the petition denied.

I am authorized to state that Mr. Justice Hutchison concurs in this opinion.

### Opinion of Mr. Justice Wolf.

A petition for certiorari was originally filed before me, then acting as judge in vacation. The following opinion was issued:

"This is a petition for certiorari wherein the writer would have been inclined to deny the issuance of the writ or the entertainment of a hearing if he had not had some doubt as to whether the District Court of San Juan could appoint, as ancillary administrator, a non-resident of Puerto Rico. The petitioner at the hearing, however, placed no reliance on said nonresidence.

"Charles Borda Klugkist owed money to Theodore Baettenhaussen. The latter was domiciled in the State of New York and died there testate. Lina E. Grey, Julius A. Roth, Kirt W. Baettenhaussen as beneficiaries, and the Guaranty Trust Company of New York as executor under the will of the deceased Baettenhaussen, brought a suit *ex parte*, in the District Court of San Juan, for the purpose of having one George H. Emerson named ancillary administrator (*administrador auxiliar*) of the property of Theodore Baettenhaussen in Puerto Rico. The District Court of San Juan thereafter appointed George H. Emerson ancillary administrator.

"It was alleged in the lower court that Charles Borda could not be found; that he is not a resident and never was a resident of Puerto Rico; that he owned certain real property on this island which he transferred or attempted to transfer to his wife and that the latter conveyed said realty in trust to the American Colonial Bank and Trust Company of Porto Rico, who is the petitioner herein. The purpose of Lina E. Grey et al. was apparently to file suit somewhat in the nature of a creditor's bill to set aside the conveyance made, through an intermediary, to the American Colonial Bank and Trust Company.

"Perhaps the principal question in this case is whether Mr. Theodore Baettenhaussen left any property in Puerto Rico for the recovery of which an administrator could be named. In other words, the petitioner maintains that the right of a simple contract creditor to bring an action for the annulment of a conveyance of property by his debtor does not in itself constitute a lien or interest upon such property so that a court might proceed to appoint an administrator for its foreclosure or recovery. The petitioner does not question the doctrine of *Sánchez* v. *Soto Nussa,* 14 P.R.R. 430. That was a case where the plaintiffs were seeking to recover the possession of what they alleged to be the property of the decedent.

"Let us suppose that Mr. Baettenhaussen were alive today and authorized a suit in his name to set aside the ultimate conveyance to the American Colonial Bank and Trust Company. Such a suit is distinctly authorized by section 1064 of the Civil Code (1930 ed.).

It makes no difference that the claim of Mr. Baettenhaussen was founded upon a simple contract debt.

"What Baettenhaussen had was a right to bring his suit to annul, if annulable, the conveyances which led up to the title or supposed title in the American Colonial Bank and Trust Company. On his death this right devolved upon his legal representative. In this case, the legal representative is admittedly the Guaranty Trust Company of New York, testamentary executor. It is my opinion that the right to bring an action either in Baettenhaussen or his representative was a property right. The word "Property" is *nomen generalissimum* and some of the considerations of it may be seen in *Gleason* v. *Thaw,* 236 U. S. 558; *People* v. *Alcaide,* 29 P.R.R. 171; 50 C. J. 740 and 763, the last named under the title "choses in action." For the purpose of ancillary administration the petitioner does not convince me that the most general concept of property is not applicable.

"Concluding, as I do, that this chose in action was, in the hands of Baettenhaussen or his representative, a property right in Puerto Rico, it would follow that a district court would have a right to name an ancillary administrator to follow up the supposed right.

"I may likewise draw attention to the fact that the petitioner, as the supposed ultimate grantee, is the real defendant. Neither Charles Borda nor his wife, after making their conveyances, need be considered. All the transfers under the averments are seemingly voluntary and the said defendant could acquire nothing that could not be made the subject of a suit by a creditor.

"It is suggested that there is nothing in the laws of Puerto Rico authorizing the appointment of an ancillary administrator. Where a man dies leaving property in Puerto Rico, the practice of the courts, in the absence of a will, is to appoint a judicial administrator. If I am right in the rest of my reasoning, a judicial administrator could have been appointed for any property that Baettenhaussen had left in Puerto Rico. The parties and the court called the person named an ancillary administrator which to my mind is tantamount to a judicial administrator. To the credit of the petitioner it is that the writer has felt to enter into these considerations and he regrets not to have better developed the opinion.

"The writ prayed for should be denied."

The case of *Wyman* v. *Halstead,* 109 U. S. 654, 656, has held that "simple debts are assets at the domicile of the

debtor." But that an auxiliary administration can be taken out elsewhere is decided by *Wilkins* v. *Ellett,* 108 U. S. 256, where the court said:

"There is no doubt that the succession.to the personal estate of a deceased person is governed by the law of his domicil at the time of his death; that the proper place for the principal administrator of his estate is that domicil; that administration· may also be taken out in any place in which 'he leaves personal property; and that no suit for the recovery of a debt due to him at the time of his death can be brought by an administrator as such in any State in which he has not taken out administration.

"But the reason for this last rule is the protection of the rights of citizens of the State in which the suit is brought; and the objection does not rest upon any defect of the administrator's title in the property, but upon his personal incapacity to sue as administrator beyond the jurisdiction which appointed him.

"     *          *          *          *          *          *          *

"The administrator, by virtue of his appointment and authority as such, obtains the title in promissory notes or other written evidences of debt, held by the intestate at the time of his death, and coming to the possession of the administrator; and may sell, transfer and indorse the same; and the purchasers or indorsees may maintain actions in their own names against the debtors in another State, if the debts are negotiable promissory notes, or if the law of the State in which the action is brought permits the assignee of a chose in action to sue in his own name. *Harper* v. *Butler,* 2 Pet. 239; Shaw, C. J., in *Rand* v. *Hubbard,* 4 Met. 252, 258–260; *Petersen* v. *Chemical Bank,* 32 N. Y. 21. And on a note made to the intestate, payable to bearer, an administrator appointed in one State may sue in his own name in another State. *Barrett* v. *Barrett,* 8 Greenl. 353; *Robinson* v. *Crandall,* 9 Wend. 425."

That a claim to the right to set aside deeds constitutes property of an estate upon which administration may be had has been held in *In Re Rees' Estate,* 212 Pac. 234. Copying from the syllabus:

"A claim of a right to set aside deeds made by decedent constitutes property of the estate in the nature of real property upon which administration may be had.

"It is discretionary with a probate court to appoint an administrator where the only property of a decedent is an equitable claim of a right to set aside deeds made by decedent."

In New York it has been held that a debt due by a New York business house to a resident of Germany who died and left property in Germany, where administration was taken, was enough to support an ancillary administration in New York. *Matter of Warburg,* 129 Misc. (N. Y.) 832.

The Supreme Court of California upheld the jurisdiction of the state court to hear a case between nonresidents to rescind a deed of sale of land located outside California. We copy from the syllabus:

"1. The courts of this state have jurisdiction over an action between nonresidents to rescind, on the ground of the vendor's fraud, a sale of mining property situated in a foreign country, where the contract of sale was entered into in this state, and where the consideration, consisting partly of money, and partly of notes executed by a citizen of this state secured by mortgages on land within the state, is in the hands of the vendor's agent, a resident of this state.

"2. The real object of the action being to compel the restoration to the vendees of the money which they were fraudulently induced to give for the mining property, and the cancellation of the securities likewise procured by fraud, all of which are within the court's jurisdiction, the fact that they have offered, as they were equitably bound to do, to restore to the vendors the title to the mining property, will not deprive the court of jurisdiction on the ground that the action involves the title to land in a foreign country.

"3. As the action is virtually *in rem* to compel the restoration of the consideration fraudulently obtained from the vendees, which is still within the state, the superior court has jurisdiction of the action, though the vendors were never personally served with process, and have not submitted themselves to the court's jurisdiction."
*Loaiza* v. *Levy,* 24 Pac. 707.

The differences between actions *in rem, in personam,* and *quasi in rem,* are clearly set up in *Gassert* v. *Strong,* 98 Pac. 497. Again from the syllabus:

"5. JUDGMENT—JURISDICTION—SERVICE OF PROCESS BY PUBLICATION.—Service of process by publication on a nonresident does not

warrant a judgment *in personam* against him, but in a suit against property within the jurisdiction of the court it may render a judgment *in rem*.

"6. ACTION—FORMS—'ACTION *in Personam*.'—A proceeding *in personam* is one, in form as well as in substance, between the parties claiming a right, and the judgment binds the defeated party to some sort of personal liability.

"7. JUDGMENT—'ACTION *in Rem*.'—An action *in rem* is a proceeding to determine the state or condition of the thing itself, and a judgment *in rem* is but an adjudication pronounced on the status of some particular subject-matter.

"8. ACTION—'ACTION *Quasi in Rem*.'—An action *quasi in rem* is an action in which property of a nonresident is attached and is held for the discharge of debts due by him to citizens of the state and for the enforcement of liens; and an action *quasi in rem* differs from an action strictly *in rem* in that the interest of defendant is alone sought to be affected, that citation to him is required, and that judgment therein is only conclusive between the parties.

"9. JUGDMENT—JURISDICTION.—Jurisdiction over the person of defendant is acquired first by service of process, or, secondly, by a proceeding against his property within the jurisdiction of the court; but in the latter case defendant is not personally bound by the judgment beyond the property in question.

"11. JUDGMENT—ESTABLISHMENT—ENFORCEMENT—JURISDICTION. —An action to establish and enforce a trust in corporate stock in the possession of a person in the state brought against a nonresident holding the legal title is *quasi in rem,* and substituted service on the nonresident, as authorized by Code Civ. Proc. sec. 637 (Rev. Codes, sec. 6520), is sufficient to give the court jurisdiction."

It is true that the case of *Wilkins* v. *Ellett, supra* and *Wyman* v. *Halstead, supra,* seem to hold contrary to the trend of this opinion. These cases were followed by a latter case, *Blodgett* v. *Silberman,* 277 U. S. 1, where the Supreme Court of the United States said:

"At common law the maxim '*mobilia sequuntur personam*' applied. There has been discussion and criticism of the application and enforcement of that maxim, but it is so fixed in the common law of this country and of England, in so far as it relates to intangible property, including choses in action, without regard to whether they are evidenced in writing or otherwise and whether the papers evi-

dencing the same are found in the State of the domicil or elsewhere, and is so fully sustained by cases in this and other courts, that it must be treated as settled in this jurisdiction whether it approve itself to legal philosophic test or not."

However, there is a difference between the *Silberman* case and the one at bar. In the case of *Duehay* v. *Acacia Mutual Life Insurance Co.*, 124 A. L. R. 1280, the U. S. Court of Appeals for the District of Columbia said:

"Appellant relies strongly upon the case of *Blodgett* v. *Silberman*, 277 U. S. 1, 9, 10, 48 S. St. 410, 72 L. ed. 749. That case, however, pertains to the power of the state of a decedent's domicil to impose a tax upon his intangible property. The Court there did not consider the question here involved, i. e., whether an intangible may have a situs, separate and apart from the domicil of its owner, for the purposes of administration. The rule as laid down in the Silberman case is not free from exceptions, even in the field of taxation. See *Wheeling Steel Corp.* v. *Fox*, 298 U. S. 193, 210, 56 S. Ct. 773, 80 L. ed. 1143. We think it is not applicable here."

In that case an ancillary administration was granted in Washington. The deceased was a resident of and died in Virginia. His only property in Washington was a claim owing to deceased. The opinion from which the citation is taken turned on whether creditors in Washington had preference in collecting or shared with Virginian creditors. The Court granted preference to creditors within the District. That would not be a question here because Baettenhaussen, so far as appears from the record, had no obligations in Puerto Rico. We believe that, under the circumstances of the case, the estate of Baettenhaussen had the right to an ancillary administration.

If the contrary conclusion is sound, then Mr. Baettenhaussen alive or his personal representatives if Mr. Baettenhaussen is dead, as is the fact, cannot sue on the claim in New York, because so far as the proceedings disclose Mr. Borda is not a resident of New York and has no property there. From the standpoint of the law of vendor and vendee, and

creditor's bills, the property of a fraudulent creditor may be reached wherever the property is located, and an ancillary administrator can be appointed in most jurisdictions in the United States. If this claim cannot be collected in Puerto Rico, then the estate of Mr. Baettenhaussen is without a remedy. *Ubi jus, ibi remedium.*

Dissenting opinion of MR. JUSTICE TRAVIESO.

November 22, 1940.

By the present certiorari proceeding we are asked to review and reverse the order made, on May 10, 1937, by the District Court of San Juan, appointing George H. Emerson, a resident of New York, ancillary administrator (*administrador judicial auxiliar*) of the property of the decedent Theodore Baettenhaussen in Puerto Rico.

As appears from the record, in May 1937, Lina E. Grey, Julius A. Roth, Kurt W. Baettenhaussen, and Guaranty Trust Company of.New York petitioned the District Court of San Juan for the appointment of George H. Emerson as ancillary administrator of the property of Theodore Baettenhaussen in Puerto Rico, and as grounds for their petition they alleged:

"A. That Theodore Baettenhaussen died in New York, leaving a will which was admitted to probate.

"B. That testamentary letters were issued by a New York court in favor of one of the petitioners, Guaranty Trust Company of New York, in its capacity as executor appointed under said will.

"C. In the will of Theodore Baettenhaussen there were designated as heirs the other petitioners, Lina E. Grey, Julius A. Roth, and Kurt W. Baettenhaussen.

"D. That the testator, at the time of his death, was the owner of 15 promissory notes for the total sum of $59,000, executed in his favor by Charles Borda Klugkist, and that Charles Borda Klugkist at that time also owed to said Theodore Baettenhaussen the sum of $4,036.67, and interest on said sums.

"E. That as Charles Borda had been unable to pay said debt, he wrote a letter to the committee in charge of the affairs of Baettenhaussen, who was then insane, wherein he stated that he was doing

everything possible to satisfy said debt and referred to certain properties supposedly owned by Charles Borda Klugkist in Puerto Rico.

"F. That as Baettenhaussen has not succeeded in collecting the money alleged to be owed by Borda, the latter not having been located in the United States of America where he resides, the heirs of Baettenhaussen engaged the services of Harry G. Molina, Esq., in order to bring the necessary action in this island to collect said promissory notes through the attachment of the property of Borda in Puerto Rico.

"G. That it transpired that the property of Borda in Puerto Rico had been transferred by the latter to his wife for the sum of $1.00 and other consideration, by a deed executed in New York, and that afterwards the Borda spouses conveyed said property in trust to the American Colonial Bank and Trust Company of Porto Rico.

"H. That subsequently the executor, Guaranty Trust Company of New York, brought suit against Charles Borda and his wife and the American Colonial Bank and Trust Company of Porto Rico in the Federal Court and that the complaint therein was dismissed because said court ruled that an executor foreign to this jurisdiction had no power to sue in Puerto Rico.

"I. That thereafter Attorney Molina was authorized by the heirs of Baettenhaussen and by the latter's executor to procure, in a court of Puerto Rico, the appointment of George H. Emerson as ancillary administrator of the property of Theodore Baettenhaussen in Puerto Rico, for the purpose of bringing any action that might be necessary to collect the said debt.

"J. That there is no provision in the codes and laws of Puerto Rico regarding the appointment of ancillary administrators.

"K. That the petitioners are the only parties interested in the estate of Baettenhaussen and have relieved Mr. Emerson of the obligation to file a bond."

Taking those facts as a basis, Judge Llauger Díaz, of the District Court of San Juan, by an order of May 10, 1937, appointed George H. Emerson, a resident of New York, ancillary administrator *(administrador judicial auxiliar)* of the property of Baettenhaussen in Puerto Rico, and on the 19th of the same month denied a motion of the American Colonial Bank and Trust Co. of Porto Rico to set aside said appointment.

In the brief submitted in support of the petition for certiorari it is urged:

"1. That the District Court of San Juan lacks jurisdiction in this case to appoint an ancillary administrator of the property left by the decedent Theodore Baettenhaussen in Puerto Rico, for two reasons, to wit:

"(a) That there was no property in the Island of Puerto Rico which belonged to said Baettenhaussen at the time of his death, nor is there at present any property belonging to the heirs of the said Baettenhaussen.

"(b) That, even assuming the existence of any property which might have belonged to said Baettenhaussen, and which were subject to administration by a court of Puerto Rico, the only court that could have appointed a judicial administrator was the District Court of Arecibo and not that of San Juan.

"2. That, in view of the circumstances of the case, the District Court of San Juan erred in appointing a nonresident as judicial administrator."

The first and main question presented to us for decision in this case is whether the decedent Baettenhaussen left any property in Puerto Rico, to recover which an ancillary administrator can be appointed. The petitioner maintains that a right of action of an unsecured creditor to set aside a supposed transfer of a property, made by the debtor with the alleged purpose of defrauding his creditors does not constitute by itself such a lien or interest in the property thus transferred as to enable a court to appoint an administrator in order to enforce or collect the same. The interveners maintain a contrary view.

According to section 556 of our Code of Civil Procedure, 1933 ed., a petition for the judicial administration of the property of a decedent "shall be filed in the district court having jurisdiction over the last resident of the decedent *or of the place where the greater part of his property is situated* and shall set forth under oath:

"(1) The death of the decedent.

"(2) *    *    *    *    *    *    *

"(3) ＊ ＊ ＊ ＊ ＊ ＊ ＊

"(4) ＊ ＊ ＊ ＊ ＊ ＊ ＊

"(5) That decedent left property subject to distribution, and the amount and nature of such property." (Italics ours.)

The death of the person or the presumption of death derived from his disappearance in the case of absentees, his residence at the time of his death or in the alternative, the leaving by the decedent of property subject to distribution, are jurisdictional facts which must appear from the application for judicial administration of said property, as otherwise the appointment of a judicial administrator would be *coram non judice* and therefore void.

"JURISDICTIONAL FACTS.—To make a grant of letters of administration valid two jurisdictional facts must exist: 1. The party must be dead; and 2. He must have resided in the country at the time of his death, or have left assets therein. Both of these facts must exist before letters of administration can be granted: *Beckett* v. *Selover,* 7 Cal. 215, 68 Am. Dec. 237; *Haynes* v. *Meeks,* 10 Cal. 110, 70 Am. Dec. 703; *Van Giessen* v. *Bridgford,* 83 N. Y. 348, *Burnett* v. *Meadows,* 7 B. Mon. 277, 46 Am. Dec. 517." 81 Am. St. Rep. 536.

On this same point, see the summary of the decisions which is made in 11 R. C. L. 84, thus:

"JURISDICTIONAL FACTS GENERALLY.—In order to render valid a grant of letters of administration the view is generally accepted that certain jurisdictional facts must exist. These facts are that the person on whose estate the letters are being granted is in fact dead, and that at the time of death he was a resident of the county wherein letters are being granted, or if not a resident that he left assets in such county. It has been said that the fact of the death of the intestate and of his residence within the county are foundation facts upon which all the subsequent proceedings in the administration of the estate rest, and that if the intestate was not an inhabitant of the state at the time of his death, and left no assets in the state, and none came into it afterwards, no jurisdiction is conferred on the court to grant letters of administration in any county of the state, and such letters, if granted, are coram non judice and viod. Assets constitute a jurisdictional fact only in the absence of legal residence in the county."

From the petition filed by Lina E. Grey, Julius A. Roth, Kurt W. Baettenhaussen and Guaranty Trust Company in the District Court of San Juan, requesting the appointment of George H. Emerson as judicial administrator of the property of Theodore Baettenhaussen in Puerto Rico, the following facts appear as affirmatively alleged:

(1) That the supposed creditor, Theodore Baettenhaussen, died while domiciled outside of Puerto Rico, in New York.

(2) That the supposed debtor is not domiciled in Puerto Rico, nor lives in Puerto Rico.

(3) That the supposed claim held by the creditor against the debtor originated in certain loans made in New York (or at least outside of Puerto Rico), and evidenced by certain promissory notes issued in New York (or at least outside of Puerto Rico).

(4) That the only connection that the case might have with Puerto Rico arises from the fact that on January 21, 1933, the supposed debtor, Borda, while being the owner of certain real property in Puerto Rico, made a transfer of that property by means of an instrument executed in New York; and that, according to the allegations of the creditor's heirs, said transfer was in fraud of their ancestor.

As the death of Theodore Baettenhaussen and its occurrence outside of Puerto Rico are set forth in the petition, it is necessary to determine whether the claim against Charles Borda Klugkist, which Baettenhaussen owned at the time of his death, constitutes *property in Puerto Rico* for the purpose of authorizing the appointment of a judicial administrator.

The Supreme Court of the United States, in the case of *Wyman* v. *Halstead,* 109 U.S. 654, 656, said:

"The general rule of law is well settled, that for the purpose of founding administration all simple contract debts are assets at the domicil of the debtor; and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the nature of the debt, but is merely evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable. (Citations.)"

The above case was cited with approval in *Baker* v. *Baker, Eccles & Company,* 242 U.S. 394, 400.

There having been established the fundamental facts that the property left by Baettenhaussen at his death consisted of unsecured simple promissory notes executed in his favor by Borda; that the intestate, his representative, and his debtor reside outside of Puerto Rico and have not submitted to the jurisdiction of its tribunals; and that the only tangible property in which Borda might have some interest is a one-third condominium in an estate located in the judicial district of Arecibo which is alleged to have been transferred by Borda in fraud of his creditors, we shall now proceed to state the two questions on whose determination depends the decision of the present case.

1st. Has the holder of an unsecured promissory note any other substantive right than that of demanding that his debt be paid in due course?

2nd. Has the nonresident holder of a promissory note of that character, on which no adjudication has been made, any estate or lien in the property of his debtor who is also a nonresident, which might serve as a basis for a decision in the sense that the holder of said promissory note, who died outside of Puerto Rico, left property whose *situs* is at Puerto Rico and which may be the subject of judicial administration?

The decisions which we have examined compel us to answer both these questions in the negative.

In the case of *Pusey & Jones Co.* v. *Hanssen,* 261 U.S. 491, 67 L. ed. 763, the Federal Supreme Court speaking through Mr. Justice Brandeis said:

" ... A receiver is often appointed upon application of a secured creditor who fears that his security will be wasted. (Citation.) A receiver is often appointed upon application of a judgment creditor who has exhausted his legal remedy. (Citation.) But an unsecured simple contract creditor has, in the absence of statute, no substantive right, legal or equitable in or to the property of his debtor. This is true, whatever the nature of the property; and, although the

debtor is a corporation and insolvent. The only substantive right of a simple contract creditor is to have his debt paid in due course. His adjective right is, ordinarily, at law. He has no right whatsoever in equity until he has exhausted his legal remedy. After execution upon a judgment recovered at law has been returned unsatisfied he may proceed in equity by a creditor's bill. (Citations.) He may, by such a bill, remove any obstacle to satisfying his execution at law; or may reach assets equitable in their nature; or he may provisionally protect his debtor's property from misappropriation or waste, by means either of an injunction or a receiver.''

We agree with the interveners that the right which the law grants to a creditor to sue for the annulment of a transfer made by his debtor for the purpose of defrauding him, is *a property right;* but we can not agree that it is a right in any particular property of the debtor. As a chose in action, it is and should be regarded as a property right, but not as a right *in rem,* because the mere holding of an unsecured promissory note does not confer upon the holder any right, title, or lien upon the property of his debtor, even upon such as the latter may have conveyed in fraud of his creditors. Assuming that Borda did not make the transfer which is alleged to have been made by him fraudulently, would the representative of Baettenhaussen have any right of action *in rem* against Borda's undivided interest that might serve as a basis for the allegation that Baettenhaussen left property in Puerto Rico subject to judicial administration? Certainly not. The representative of the decedent Baettenhaussen would be bound in such a case to sue Borda upon the promissory notes, by filing his complaint in the domicile of the debtor, as there would be involved a personal action for the enforcement of an obligation which has its *situs* at the place of residence of the debtor. And after obtaining a judgment in his favor, if the execution thereon were returned unsatisfied, the legal representative of the deceased could resort to the ancillary remedy or adjective right granted by law to demand the annulment of any fraudulent transfer which the debtor might have made. That action

for nullity could certainly be brought also in the domicile of the debtor, as it would be an action or remedy of a personal nature.which does not confer any right or title *in rem*.

It is true that, under the decisions in this jurisdiction, it is not necessary that a person should be a judgment creditor before bringing an action for rescission, and that the plaintiff is allowed, in the same action, to prove his character as a creditor, and to demand the rescission of a fraudulent conveyance. *Suc. of Almazán* v. *López et al.*, 20 P.R.R. 502.

The fundamental purpose of those decisions is to furnish the creditor with the most speedy and expeditious means or proceedings for the enforcement of his claim, by permitting him to join in a single complaint an action of debt, which is the principal action, with one for rescission, which is a subsidiary action. Sections 1243 and 1246 of the Civil Code, 1930 ed. Both the code and the jurisprudence recognize as an *adjective right* in favor of a simple contract creditor the right to enforce his claim and at the same time to demand the removal of any obstacle that might prevent the execution of any judgment rendered in his favor. But neither the one nor the other grant to the creditor any substantive right in or to the property of the debtor which might be considered as property located in the place where the debtor's property is situated.

According to our decisions, in an action of this character there must be alleged and proved: (*a*) That the defendant is really the plaintiff's debtor; (*b*) that the defendant alienated his property in fraud of his creditor; (*c*) that the plaintiff has been injured by such alienation; (*d*) that the plaintiff has no other legal remedy to obtain reparation for the injury suffered than that of seeking the rescission of the contract of alienation. *Suc. of Almazán* v. *López et al., supra.* From the foregoing it may clearly be seen that although the joinder of the actions is allowed, the proof of the existence of the obligations continues to be a condition precedent to the grant of the dual relief provided by law, namely, (*a*) a pronounce-

ment adjudging the defendant to pay the obligation, and (b) an adjudication of the nullity of the transfer made by the defendant debtor.

The above considerations lead us to the conclusion that the decedent Theodore Baettenhaussen left no property which might be the subject of judicial administration.

There is a further reason which, in our judgment, is sufficient in itself for the reversal of the decision appealed from and for the annulment of the appointment of George H. Emerson as ancillary administrator. We refer to the alleged lack of jurisdiction of the District Court of San Juan to make such an appointment.

We have already seen that the *situs* of the debt, owing from Borda to Baettenhaussen and represented by simple unsecured promissory notes, is at the domicile of the debtor Borda, who resides outside the jurisdiction of Puerto Rico. And it has been held by the U. S. Circuit Court of Appeals, in *Domenech* v. *United Porto Rican Sugar Co.*, 62 F. (2d) 552, 555, that property so situated is outside the fiscal jurisdiction of the Legislature of Puerto Rico.

Now, even if we were to concede that, as claimed by the intervener, the law in this case confers on the present holder of the notes, or the Guaranty Trust Company of New York, in its capacity as testamentary executor, some title, right, or interest in or to the property, which is said to have been conveyed by the debtor in fraud of his creditors, we would be bound to hold that the *situs* of said title, right, or interest is in the judicial District of Arecibo, where the Esperanza Estate, the property as to which a right *in rem* is claimed to exist for the purpose of subjecting the same to the payment of the obligations of an absent debtor, is located.

Our Code of Civil Procedure, 1933 ed., after enumerating the persons entitled to apply for a judicial administration of the estate of a decedent, provides:

" ... Such petition shall be filed in the district court having jurisdiction over the *last residence of the decedent or of the place*

*where the greater part of his property is situated* and shall set forth under oath: ..." (Italics ours.) Sec. 556, Code Civ. Proc., 1933 ed.

There is not in our laws any provision which expressly authorizes the appointment of an ancillary administrator for the purpose of administering the property of a person who has died outside of Puerto Rico, subject to the principal administration decreed by a competent tribunal at the domicile of the testator or intestate. However, this Supreme Court, drawing inspiration from "the principles of comity taken in connection with said section 25 and section 7 of the Civil Code," in *Sánchez et al.* v. *Soto Nussa,* 14 P.R.R. 430, held that the appointment of an ancillary administrator of the property of Sánchez for the purpose of enabling said administrator to claim for the benefit of the heirs certain real property, which the testator owned in Puerto Rico at the time of his death and which was unlawfully detained by a third person, was proper. The petition in said case was filed in the District Court of Mayagüez, as that was the judicial district in which the property sought to be recovered was located.

We think that we should not go any further than we did in the cited case of *Sánchez et al.* v. *Soto Nussa, supra.* A petition for the appointment of an ancillary administration must be governed by the provisions of sections 556 and 559 of the Code of Civil Procedure (1933 ed.) and hence filed in the district court having jurisdiction over the last residence of the decedent or of the place where the property to be administered is situated.

Let us examine the cases cited in support of the majority opinion.

In *Sánchez et al.* v. *Soto Nussa* (May 27, 1908) *supra,* it was decided for the first time in Puerto Rico that, although the local statutes do not expressly authorize it, upon principles of comity there may be appointed an ancillary administrator. In that case it was alleged that there was real

property in Puerto Rico belonging to the decedent which another person occupied at the time of his death. Although it is true that, as stated by the court below, the object of the petition was litigation, there the representatives of the decedent alleged a property right in the estate, which distinguishes that case from the one at bar, where it is sought to collect certain promissory notes and no real right is claimed in the realty. There a real right in favor of decedent's representatives existed; here a mere personal action is involved.

In *People* v. *Alcaide et al.*, 29 P.R.R. 171, a property right was dealt with, and there was cited the case of *Gleason* v. *Thaw*, 236 U.S. 558, wherein a study was made of the concept "property". In the latter case it was held that the right to collect fees for professional services was not properly a property right, but that it may be considered property for the purpose of protection.

There is no controversy on this point, as we are all agreed that a chose in action or cause of action, may be regarded as property, for the purpose of protection.

The citations from 50 Corpus Juris, pp. 740, 763, throw no light upon this matter, as they only refer to the broad legal meaning of the word "property," which according to said citations includes choses in action, characterized as personal property (p. 763).

The case *Ree's Estate*, 212 Pac. 234, does not aid the contention of the majority but rather supports that of the writer of this opinion. In that case an ancillary administrator had obtained a judgment setting aside certain transfers of property, which he alleged was a part of the estate. After said judgment had been procured and while an appeal was pending, application was made for the appointment of a general administrator. The appointment was issued by the probate court, from whose decision an appeal was taken, and it was urged—similarly as in the case at bar—that there was no property to be administered and that therefore the appointment of a general administrator was improper. It was held:

"The claim of the right to set aside the two deeds of September, 1919, was property upon which administration might be had (*Estate of Daughaday*, 168 Cal. 63, 141 Pac. 929); and, laying aside the question whether, in strictness, such a right is real property, it is evident that in the present instance the probate court treated it as such. . . . It is to be remembered that the judgment setting aside the deeds had been rendered two and a half months before the making of the order from which the present appeal is taken. This circumstance probably impelled the court to place a value of $10,000 upon the right which was in litigation in the two cases, the pleadings of Llewellyn Rees alleging that the property itself which was the subject of the deeds was of a value of from $75,000 to $100,000. As the claim of the right to set the deeds aside was the only property which the court could have had in mind in making the finding assailed, it, of course, did have that property in mind. The finding was supported by the evidence. . . . As we have already observed, the trial court had pronounced its judgment setting aside the deeds before the appointment of respondent was made. This circumstance might well have impelled the probate court to the view that the claim of right to cancel the instruments was both tangible and valuable, notwithstanding that a right of appeal still existed. The court doubtless felt that the rendition of the judgment removed the claim from the category designated by the Supreme Court in the opinion in *Estate of Daughaday*, when that tribunal says that:

" 'It is not within the contemplation of the law that the mere assertion of any claim, however visionary and unsubstantial, shall call for the issuance of letters of administration and to that extent give a form of judicial sanction to unfounded pretensions.'

"Further, the court had already given 'a form of judicial sanction' to the claim by the appointment of special administrators to enforce it, for special administrators may be named only (italics being ours) 'to collect and take charge of the

*estate* of the decedent, . . . and to exercise such other powers as may be necessary for the preservation of the *estate*.' The special administrators having brought the actions for cancellation of the deeds to the successful issue of a judgment in the superior court, the probate department of the court surely exercised its discretion rightly in determining to replace the special administration with a general one.''

In the case at bar there is no judgment annulling the transfer. Moreover, in the *Rees* case it was alleged that the property belonged to the estate, whilst in the instant case the petitioners do not claim any special right in the property but the general right to enforce their claim against the property of the debtor.

The case of *Loaiza* v. *Levy,* 24 Pac. 707, does not throw any light upon the matter either. The question involved in that case was as follows: Some persons resident in Mexico and owners of certain mining properties, by means of fraudulent practices carried out in connection with samples of ore taken from said mines succeeded in having the mining experts, who believed that the samples were genuine and had not been tampered with, render a report assigning to the properties a value much greater than their true value. Said persons then induced two English corporations to purchase from them said mines for the price of $1,575,000, of which the purchasers paid $710,000 in gold coin in California and for the balance amounting to $865,000 they gave a promissory note, with interest at 6 per cent per annum, secured by mortgage on real estate situate in San Francisco, California. Upon discovering the fraud which had been perpetrated upon them, the purchasers brought suit in California demanding a rescission of the contract and offering in their turn to restore to the vendors everything of value which they had received from the latter by virtue of the contract. The jurisdiction of the court was attacked on the ground that neither the plaintiffs nor the defendants, with the exception of one (Loaiza) were residents of California.

The court held that, although the plaintiffs and the defendants resided outside of California, the contract, however, had been made in California, there was property in California which would be affected by the judgment, and that as the plaintiffs had resorted to the courts of California they had submitted themselves to the jurisdiction of those courts, which could impose upon them conditions in the judgment with which they must comply before they should be able to make their rights effective, and could of course compel them as a part of the judgment, to restore title to the properties which the defendants had obtained in Mexico.

The action in said case was an action *in rem*. No mere claim for the recovery of a debt was involved.

The case of *Blodgett* v. *Silberman,* 277 U.S. 1, 72 L. ed. 749, is confined to the power of the state of a decedent's domicile to impose a succession tax on intangible property, including choses in action located in other states. The rule of *mobilia sequuntur personam* was applied and it was held that the State of Connecticut, which was the domiciliary state, had jurisdiction to impose the tax, even though promissory notes or other evidence of the debt had been issued and such evidence were found in New York (page 10). In said case there was no appointment of an administrator or receiver. It was merely a question of taxation.

In the case of *Wheeling Steel Corp.* v. *Fox,* 298 U.S. 193, there was involved the imposition of a tax on intangible property of a corporation by the state in which said corporation maintained its business, and which was different from that where its principal office was established. It was held that such a tax did not violate the due process clause.

In 11 R.C.L. 72, sec. 68, it is maintained that a judicial administrator may be appointed, even though the only property of the decedent consists of a chose in action.

However, we have examined all the cases which are cited under that section, in R.C.L. as well as in the supplement, and all of them refer to cases in which the chose in action

consisted of a cause of action for death by wrongful act, and in which there was a statute authorizing the judicial administrator to bring the action, for which reason the courts declared that the fact that the legislature had authorized the administrator to sue showed that it was the legislative intention that an administrator should be appointed in order to carry out the purpose of the state. See on this point: *In re Post*, 104 Atl. 652 (N.J.), where the action was prosecuted under the act entitled "Death Act, An Act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default"; *Ghilain v. Couture*, 65 A.L.R. 553 (N.H. 1929).

In *Appeal of Jenkins*, 58 N.E. 560 (Indiana 1900), the cause of action was one for damages for the death of petitioner's husband. He had been killed by a mob who had entered the jail in which he was confined, in the custody of the sheriff Henry Bushing. It was held that the sheriff was bound to exercise reasonable care for the preservation of the life and health of the prisoners.

In *Davis v. Guarnieri*, 4 Am. St. Rep. 548 (Ohio 1887), Nicola Guarnieri was appointed administrator of the estate of his deceased wife, Angela Guarnieri. He brought an action against William P. Davis, a druggist, for damages for causing the death of said lady in selling oil of bitter almonds, a poisonous drug, instead of oil of sweet almonds, as requested by Guarnieri in order to administer the same to his wife as a physic. In the case nothing was said as to whether the decedent left other property, nor was any question raised as to whether or not the appointment of an administrator was proper.

The case of *Matter of Warburg*, 129 Misc. (N.Y.) 832, is not an authority for the present case. It is true that there it is said (p. 834) that the Surrogate's Court of New York has jurisdiction to entertain an application for the appointment of an ancillary administrator each though the only asset in New York was a debt due the estate from a corporation

domiciled in the State of New York. In the case at bar the debtor Borda does not reside in Puerto Rico.

From the record of the present case it appears that the testator Baettenhaussen had his domicile and residence in New York, where he died; that the promissory notes executed in his favor by Borda have not their *situs* in the Island of Puerto Rico; that the only alleged right in a title to property which might be the subject of judicial administration relates to real estate located within the jurisdiction of the District Court of Arecibo. The District Court of San Juan, although competent to decree a judicial administration in cases where the requisites provided by law have been complied with, in our judgment lacked jurisdiction to render the decision appealed from.

I am authorized to state that Mr. Justice De Jesús concurs in this opinion.