AMERICAN COLONIAL BANK & TRUST COMPANY OF P. R., peticionaria, *v.* CORTE DE DISTRITO DE SAN JUAN, HON. C. LLAUGER DÍAZ, JUEZ, demandada.

Núm. 1170.—*Sometido:* Noviembre 14, 1939. *Resuelto:* Octubre 29, 1940.

*Fiddler, Córdova & McConnell* y *José G. González,* abogados del peticionario Am. Colonial Bank & Trust Co. of P. R.; *Henry G. Molina* y *S. de la Fuente,* abogados del Administrador Judicial, Interventor.

Opinión del JUEZ PRESIDENTE SR. DEL TORO con la cual está conforme el JUEZ ASOCIADO SR. HUTCHISON.

La discusión de este caso ha sido larga y repetida. Llega el momento en que no es posible prolongarla más. Me doy cuenta de la fuerza de los argumentos que contiene el memorándum del Juez Asociado Sr. Travieso y de las manifestaciones hechas por el Juez Asociado Sr. De Jesús analizando la ley y todos los casos citados por los Jueces Asociados Sres. Wolf y Travieso durante la discusión, y de que se trata de un caso extremo.

Técnicamente quizá la razón esté de parte del criterio que sustentan los Jueces Asociados Sres. Travieso y De Jesús, pero tomada en cuenta la exacta situación que surge de los autos, creo que la orden cuya nulidad se pide dentro del procedimiento de *certiorari,* se inspira en la justicia y puede sostenerse interpretando liberalmente la ley y la jurisprudencia.

La presunción de correcta que tiene la resolución de la corte de distrito no ha sido destruída a mi juicio. *En tal virtud el auto expedido debe anularse y declararse sin lugar la petición.*

Estoy autorizado por el Juez Asociado Sr. Hutchison para decir que está conforme con esta opinión.

### Opinión personal del JUEZ ASOCIADO SEÑOR WOLF.

ALBACEAS Y ADMINISTRADORES—ADMINISTRACIÓN EXTRANJERA O AUXILIAR—ADMINISTRACIÓN AUXILIAR—SOBRE ACTIVO DE FINADOS EN LA ISLA.—Cuando un hombre muere en una jurisdicción extranjera, siendo acreedor de una persona que no puede ser hallada y que no tiene otros bienes conocidos que los situados en Puerto Rico, y tales bienes, por lo menos según se alega, han sido transferidos a un supuesto cesionario fraudulento, el albacea de dicho acreedor tiene derecho a perseguir dichos bienes cual si se tratara de un *chose in action* y a solicitar el nombramiento de un administrador, y cuando la Corte de Distrito de San Juan a instancia de parte designa un administrador auxiliar, tal nombramiento debe ser sostenido a fin de que el presunto cesionario pueda ser demandado en un procedimiento directo en San Juan (Opinión personal del Juez Asociado Sr. Wolf).

Originalmente se radicó una petición de *certiorari* ante mí, que a la sazón actuaba como juez de turno. Emití la siguiente opinión:

"Ésta es una solicitud de *certiorari* en la cual el suscribiente hubiese estado inclinado a denegar la expedición del auto o la celebración de una vista si no hubiese tenido dudas en cuanto a si la Corte de Distrito de San Juan podía nombrar como administrador auxiliar a un no residente de Puerto Rico. Sin embargo, en la vista la peticionaria no insistió en dicha falta de residencia.

"Charles Borda Klugkist le debía un dinero a Theodore Baettenhaussen. Este último vivía en el estado de Nueva York y murió allí testado. Lina E. Grey, Julius A. Roth, Kurt W. Baettenhaussen, como beneficiarios, y la Guaranty Trust Company of New York, como albacea testamentaria del finado Baettenhaussen, radicaron una demanda ex parte en la Corte de Distrito de San Juan con el propósito de que se nombrara a un tal George H. Emerson administrador auxiliar de la propiedad de Theodore Baettenhaussen en Puerto Rico. La Corte de Distrito de San Juan en su consecuencia nombró a George H. Emerson administrador auxiliar.

"Se alegó en la corte inferior que Charles Borda no podía ser localizado, que no era residente ni había sido nunca residente de

Puerto Rico, que era dueño de cierta propiedad inmueble en esta isla la cual transfirió o intentó transferir a su esposa y que esta última traspasó dicha propiedad en fideicomiso a la American Colonial Bank & Trust Company of Porto Rico, la cual compañía es la peticionaria en este caso. El propósito de Lina E. Grey et als. aparentemente fué radicar una demanda que participase de la naturaleza de una acción por un acreedor para anular el traspaso hecho por un intermediario a favor de la American Colonial Bank & Trust Company.

"Quizá la cuestión principal en este caso es decidir si el señor Theodore Baettenhaussen dejó propiedad alguna en Puerto Rico para recobrar la cual se podía nombrar un administrador. En otras palabras, la peticionaria sostiene que el derecho de un acreedor no garantizado a traer una acción para anular un traspaso de una propiedad por su deudor no constituye de por sí un gravamen o interés en dicha propiedad de tal manera que una corte pueda proceder a nombrar un administrador para su ejecución o cobro. La peticionaria no ataca la doctrina del caso de *Sánchez* v. *Soto Nussa,* 14 D.P.R. 442. Ése fué un caso en donde los demandantes intentaban recobrar la posesión de una propiedad que ellos alegaban pertencía al finado.

"Supongamos que el Sr. Baettenhaussen viviese aún y que autorizase la interposición de una demanda en su nombre para anular el último traspaso a la American Colonial Bank & Trust Company. Dicha acción está expresamente autorizada por el artículo 1064 del Código Civil (ed. de 1930). No importa que la reclamación del Sr. Baettenhaussen estuviera basada en una simple deuda contractual.

"Lo que Baettenhaussen tenía era un derecho a traer una acción para anular los traspasos, si éstos eran anulables, que culminaron en el título o supuesto título a nombre de la American Colonial Bank & Trust Company. A su muerte dicho derecho recayó en su representante legal. En este caso se admite que el representante legal lo es la Guaranty Trust Company of New York, albacea testamentaria. Mi opinión es que el derecho a traer una acción tanto por Baettenhaussen o por su representante era un derecho de propiedad (*property right*). La palabra "propiedad" es *nomen generalisimum* y algunas de sus interpretaciones pueden verse en *Gleason* v. *Thaw,* 236 U. S. 558; *Pueblo* v. *Alcaide,* 29 D.P.R. 184; 50 C. J. 740 y 763, la última cita bajo el título *"choses in action".* A los fines del nombramiento de un administrador auxiliar la peticionaria no me convence de que no sea aplicable el concepto más amplio de la palabra "propiedad".

"Habiendo llegado a la conclusión, como lo he hecho, de que el derecho de acción, en manos de Baettenhaussen o de su representante, era un derecho de propiedad en Puerto Rico, resultaría claro que una corte de distrito tendría derecho a nombrar un administrador auxiliar para perseguir el supuesto derecho.

"Puedo también llamar la atención hacia el hecho de que la peticionaria, como la última que supuestamente recibió el título, es la verdadera demandada. Ni Charles Borda ni su esposa, después de haber efectuado sus traspasos, necesitan ser considerados. Todas las transferencias, de acuerdo con las alegaciones, fueron aparentemente voluntarias y dicha demandada no pudo adquirir nada que no fuese objeto de una acción por un acreedor.

"Se sugiere que no existe nada en las leyes de Puerto Rico autorizando el nombramiento de un administrador auxiliar. Cuando un hombre muere y deja en Puerto Rico propiedades, la prática de las cortes, en ausencia de un testamento, es nombrar un administrador judicial. Si tengo razón en el resto de mi argumentación, un administrador judicial pudo haber sido nombrado en cuanto a cualquier propiedad que Baettenhaussen dejase en Puerto Rico. Las partes y la corte denominaron a la persona nombrada un administrador auxiliar lo que a mi juicio equivale a un administrador judicial. A la peticionaria corresponde el crédito de que el suscribiente se haya sentido obligado a entrar en estas consideraciones, y se lamenta no haber podido desarrollar mejor la opinión.

"No ha lugar a expedir el auto solicitado."

El caso de *Wyman* v. *Halstead,* 109 U. S. 654, 656, ha resuelto que "las simples deudas constituyen activo en el domicilio del deudor." Pero que una administración auxiliar puede incoarse en cualquier otra parte es cuestión que ha sido resuelta por el caso de *Wilkins* v. *Ellett,* 108 U. S. 256, en el que la corte dijo:

"No hay duda alguna de que el derecho a heredar los bienes muebles de un finado se rige por la ley de su domicilio existente en el momento de su muerte; de que el sitio adecuado para tramitar el procedimiento principal de administración de sus bienes es su domicilio; de que puede iniciarse un procedimiento de administración en cualquier lugar en que él deja bienes muebles; y de que un administrador como tal no puede instruir ningún pleito para recobrar una deuda existente al tiempo de la muerte de esa persona, en ningún estado en que no se ha iniciado el procedimiento de administración.

"Mas la razón para la existencia de esta última regla es la protección de los derechos de los ciudadanos del estado en que se inicia el litigio; y la objeción no descansa en ningún defecto del título del administrador a los bienes, sino en su incapacidad personal para demandar como administrador fuera de la jurisdicción que le designó.

"* * * * * * *

"El administrador, a virtud de su nombramiento y autoridad como tal, obtiene el título de pagarés o de cualquier otro documento que evidencie una deuda, poseído por la persona intestada al tiempo de su muerte que vaya a poder del administrador; y puede vender, transferir y endosar los mismos; y los adquirentes o endosatarios pueden instruir litigios a nombre propio contra los deudores en cualquier otro estado, siempre que las deudas se funden en pagarés negociables, y siempre que la ley del estado en que se entable el recurso permita al cesionario de una causa de acción que demande a nombre propio. *Harper* v. *Butler,* 2 Pet. 239; Shaw, C. J., in *Rand* v. *Hubbard,* 4 Met. 252, 258–260; *Peterson* v. *Chemical Bank,* 32 N. Y. 21. Y un administrador designado en un estado puede demandar a nombre propio en otro estado sobre un pagaré otorgado a favor de la persona intestada, al portador. *Barrett* v. *Barrett,* 8 Greenl. 353; *Robinson* v. *Crandall,* 9 Wend. 425."

Que una reclamación del derecho a anular escrituras constituye bienes de un finado y sobre los cuales puede instruirse una administración, ha sido resuelto en *In Re Rees' Estate,* 212 P. 234. Copiamos del sumario:

"La reclamación del derecho a anular escrituras otorgadas por un finado, constituye propiedad de la naturaleza de bienes inmuebles sobre la cual puede tramitarse un procedimiento de administración.

"Es discrecional en una corte de testamentaría designar un administrador cuando los únicos bienes de un finado lo son una reclamación del derecho a anular escrituras otorgadas por el finado."

En Nueva York se ha resuelto que una cantidad adeudada por una casa comercial de Nueva York a un vecino de Alemania, que falleció y dejó bienes en Alemania, donde se tramitó el procedimiento de administración, bastaba para sostener un procedimiento incidental de administración en Nueva York. *Matter of Warburg,* 129 Misc. (N.Y.) 832.

La Corte Suprema de California sostuvo la jurisdicción de la corte estatal para conocer de un caso entre no residentes, iniciado con el propósito de rescindir una escritura de venta de terreno situado fuera del estado de California. Copiamos del sumario:

"1.—Las cortes de este estado tienen jurisdicción sobre un litigio entre no residentes para rescindir, por fraude por parte del vendedor, la venta de una propiedad minera situada en un país extranjero, cuando el contrato de compraventa fué celebrado en este estado y cuando la causa (*consideration*), consistente parcialmente en dinero y parcialmente en pagarés otorgados por un ciudadano de este estado, garantizados por hipoteca sobre terreno dentro del estado, está en poder del agente del vendedor, residente en este estado.

"2.—Siendo el verdadero objeto del litigio el obtener la devolución a los compradores del dinero que fraudulentamente se les indujo a pagar por la propiedad minera y la cancelación de las garantías igualmente obtenidas mediante fraude, todo lo cual estaba dentro de la jurisdicción de la corte, el hecho de que ellos ofreciesen, conforme estaban obligados en equidad a hacerlo, devolver a los vendedores el título de la propiedad minera, no priva a la corte de jurisdicción por el hecho de que en la acción esté envuelto el título de bienes situados en país extranjero.

"3.—Como la acción es virtualmente una *in rem* para ordenar la devolución de la causa (*consideration*) fraudulentamente obtenida de los compradores, la cual aún está dentro del estado, la corte superior tiene jurisdicción del litigio, no obstante no haber sido notificados nunca personalmente los vendedores del litigio ni de haberse sometido jamás a la jurisdicción de la Corte." *Loaiza* v. *Levy, Judge,* 24 P. 707.

Las diferencias existentes entre acciones *in rem, in personam* y *quasi in rem,* se hacen constar claramente en el caso de *Gassert* v. *Strong,* 98 P. 497. Nuevamente copiamos del sumario:

"5. SENTENCIA—JURISDICCIÓN—NOTIFICACIÓN POR EDICTOS.—La notificación por edictos hecha a un no residente, no justifica una sentencia *in personam* en su contra, mas en un pleito dirigido contra bienes que están dentro de la jurisdicción de la corte, se puede dictar una sentencia *in rem.*

"6. Acciones—Formas—'Acciones *in Personam.*'—Un procedimiento *in personam* es uno, tanto en su forma como en su substancia, existente entre las partes que reclaman un derecho y en que la sentencia obliga a la parte perdidosa a cierta responsabilidad personal.

"7. Sentencia—'Acciones *in Rem.*'—Una acción *in rem* es un procedimiento para determinar el estado o condición de la cosa misma, y una sentencia *in rem* no es otra cosa que un decreto dictado sobre el estado de determinado asunto en cuestión.

"8. Acciones—'Acciones *Quasi in Rem.*'—Una acción *quasi in rem* es aquélla en que se embargan los bienes de un no residente y se retienen los mismos para pagar las deudas que éste tiene con los ciudadanos del estado y los gravámenes que hubiere; y una acción *quasi in rem* difiere de una acción estrictamente *in rem* en que sólo se trata de afectar los intereses del demandado, en que se exige que se le cite y en que la sentencia que se dicte es tan sólo concluyente entre las partes.

"9.—Sentencia—Jurisdicción.—La jurisdicción sobre la persona del demandado se adquiere primero mediante emplazamiento y luego mediante un recurso contra los bienes de él dentro de la jurisdicción de la corte. Mas en este último caso la parte demandada no es personalmente responsable de la sentencia que se dicte, fuera de la propiedad en cuestión.

"11.—Sentencia—Establecimiento y Ejecución de la Misma —Jurisdicción.—Una acción para establecer y exigir un fideicomiso sobre acciones corporativas que están en poder de una persona dentro del estado, iniciada contra un no residente en cuyo poder está el título legal, es una acción *quasi in rem,* y la notificación por sustitución del no residente está autorizada por el Código de Enjuiciamiento Civil en su sección 637 (Estatutos Revisados, sec. 6520), y es suficiente para dar jurisdicción a la corte."

Es cierto que los casos de *Wilkins* v. *Ellett,* supra, y *Wyman* v. *Halstead,* supra, parecen pronunciarse en sentido contrario a los términos de esta opinión. Ellos fueron seguidos por un caso posterior, *Blodgett* v. *Silberman,* 277 U.S. 1, en el que la Corte Suprema de Estados Unidos dijo:

"En el derecho común era aplicable la máxima *mobilia sequnntur personam.* Ha habido bastante discusión y crítica en torno a la aplicación y vigencia de esa máxima, mas ella está fijada de tal modo en el derecho común de este país y de Inglaterra, en tanto en cuanto a bienes intangibles se refiere, incluyendo *"choses in action",* irres-

pectivamente de si éstas constan por escrito o en alguna otra forma y de si los documentos que evidencian las mismas se hallan en el estado del domicilio o en cualquier otro, y está tan ampliamente sostenida por casos de éste y otros tribunales, que debe considerársele como cuestión resuelta en esta jurisdicción, ora la misma pase o no con éxito una prueba filosófica.''

Sin embargo, existe diferencia entre el caso de Silberman y el de autos. En el caso de *Duehay* v. *Acacia Mutual Life Insurance Co.*, 124 A.L.R. 1280, la Corte de Apelaciones de los Estados Unidos para el Distrito de Columbia se expresó así:

''El apelante descansa enfáticamente en el caso de *Blodgett* v. *Silberman*, 277 U. S. 1, 9, 10, 48 S. Ct. 410, 72 L. ed. 749. Ese caso, sin embargo, se refiere al poder del estado en que se halla el domicilio de un finado a fijar una contribución sobre sus bienes incorpóreos. En él la Corte no consideró la cuestión aquí envuelta, es decir, si una propiedad intangible puede tener un *situs* separado e independiente del domicilio de su dueño para fines de administración. La regla, tal cual ha sido sentada en el caso de Silberman no está libre de excepción, aún en el campo contributivo. Véase *Wheeling Steel Corp.* v. *Fox*, 298 U. S. 193, 210, 56 S. Ct. 773, 80 L. ed. 1143. Creemos que no es aplicable al presente caso.''

En dicho caso se autorizó una administración auxiliar en la ciudad de Wáshington. El finado era vecino de Virginia y allí falleció. Sus únicos bienes en Wáshington eran una reclamación que se le adeudaba. La opinión de la cual se ha tomado la cita giró en torno a si los acreedores en Wáshington tenían preferencia a cobrar la reclamación o si ellos tenían que concurrir con los acreedores de Virginia. La corte concedió preferencia a los acreedores dentro del distrito. Ésa no sería una cuestión en el presente caso, toda vez que Baettenhaussen, conforme aparece de los autos, no tenía deudas en Puerto Rico. Creemos que bajo las circunstancias del caso la sucesión Baettenhaussen tenía derecho a un procedimiento auxiliar de administración.

De ser correcta la conclusión contraria, entonces el señor Baettenhaussen en vida, o sus representantes personales al

fallecimiento de éste, que es precisamente la realidad, no pueden demandar a base de la reclamación existente en Nueva York, puesto que según se desprende de los procedimientos el señor Borda no es un residente del estado de Nueva York ni tiene bienes allí. Desde el punto de vista de la ley de vendedor y comprador y de la relativa a las cuentas de los acreedores (*creditors' bills*), los bienes de un acreedor fraudulento pueden ser embargados doquiera éstos radiquen, y en la mayoría de las jurisdicciones de los Estados Unidos se puede nombrar un administrador auxiliar. Si esta reclamación no puede cobrarse en Puerto Rico entonces la sucesión del señor Baettenhaussen carece de remedio. *Ubi jus, ibi remedium.*

Opinión disidente del JUEZ ASOCIADO SEÑOR TRAVIESO.

Noviembre 22, 1940.

Por el presente recurso de *certiorari* se nos pide que revisemos y revoquemos la resolución dictada por la Corte del Distrito de San Juan, el 10 de mayo de 1937, nombrando a George H. Emerson, residente en New York, para el cargo de Administrador Judicial Auxiliar de los bienes del difunto Theodore Baettenhaussen en Puerto Rico.

En mayo de 1937, según aparece de los autos, Lina E. Grey, Julius A. Roth, Kurt W. Baettenhaussen y Guaranty Trust Company of New York, pidieron a la Corte de Distrito de San Juan que nombrase a George H. Emerson administrador judicial auxiliar de los bienes de Theodore Baettenhaussen en Puerto Rico, y como fundamento de tal petición adujeron:

"A. Que Theodore Baettenhaussen murió testado en Nueva York, habiendo sido su testamento reconocido (*admitted to probate*).

"B. Que por una Corte de Nueva York se libraron cartas testamentarias a favor de uno de los peticionarios, Guaranty Trust Company of New York, en su carácter de albacea nombrado como tal en dicho testamento.

"C. En el testamento de Theodore Baettenhaussen fueron instituídos como herederos los otros peticionarios, Lina E. Crey, Julius A. Roth y Kurt W. Baettenhaussen.

"D. Que al morir el causante éste era dueño de 15 pagarés de una suma total de $59,000 otorgados a su favor por Charles Borda Klugkist y que además Charles Borda Klugkist adeudaba en esa misma ocasión a dicho Theodore Baettenhaussen la cantidad de $4,036.67, más intereses sobre dichas cantidades.

"E. Que no habiéndole sido posible a Charles Borda pagar dicha deuda, éste le dirigió una carta al comité que representaba los asuntos de Baettenhaussen, quien a la sazón estaba demente, diciendo que estaba haciendo todo lo posible para solventar dicha deuda y refiriéndose a ciertas supuestas propiedades que dicho Charles Borda Klugkist tenía en Puerto Rico.

"F. Que no habiendo podido Baettenhaussen cobrar el dinero que se alega adeudado por Borda, por no haber sido localizado este último, quien reside en los Estados Unidos de América, los herederos de Baettenhaussen contrataron los servicios del Lcdo. Henry G. Molina para que trabara la acción necesaria en esta Isla para el cobro de dichos pagarés mediante el embargo de los bienes de Borda en Puerto Rico.

"G. Que resultó que los bienes de Borda en Puerto Rico habían sido traspasados por éste a su esposa en consideración a la cantidad de $1.00 y otras consideraciones, mediante escritura otorgada en Nueva York y que luego los esposos Borda transfirieron dichos bienes 'in trust' al American Colonial Bank and Trust Company of Porto Rico.

"H. Que subsiguientemente el albacea, Guaranty Trust Company of New York, demandó a Charles Borda y a su esposa y al American Colonial Bank and Trust Company of Porto Rico en la Corte Federal y que dicha demanda fué desestimada porque dicha Corte adjudicó que un albacea extraño a esta jurisdicción no tenía facultades para demandar en Puerto Rico.

"I. Que luego el Lcdo. Molina fué autorizado por los herederos de Baettenhaussen y por su albacea para que obtuviera el nombramiento de George H. Emerson en una Corte de Puerto Rico como administrador judicial auxiliar de los bienes de Theodore Baettenhaussen en Puerto Rico, para establecer cualesquiera acciones que fueran necesarias para cobrar la referida deuda.

"J. Que no existe disposición alguna en los Códigos y leyes de Puerto Rico con referencia al nombramiento de administradores judiciales auxiliares (*ancillary administrators*).

"K. Que los peticionarios eran todos los interesados en el caudal hereditario de Baettenhaussen y relevaron al señor Emerson de la prestación de una fianza."

Tomando esos hechos como base, el Juez Llauger Díaz, de la Corte de Distrito de San Juan, nombró por resolución de 10 de mayo de 1937 al Sr. George H. Emerson, residente en New York, administrador judicial auxiliar de los bienes de Baettenhaussen en Puerto Rico, y el día 19 del mismo mes declaró sin lugar una moción del American Colonial Bank and Trust Co. of Porto Rico sobre nulidad de dicho nombramiento.

En el alegato sometido en apoyo de la solicitud de revisión se alega:

"1. Que la Corte de Distrito de San Juan carece de jurisdicción en este caso para nombrar un administrador judicial auxiliar de los bienes relictos en Puerto Rico del difunto Theodore Baettenhaussen por dos razones, a saber:

"(a) Que no existen dentro de la Isla de Puerto Rico bienes algunos que pertenecieran a dicho Baettenhaussen en la época de su fallecimiento, ni existen actualmente bienes algunos que pertenezcan a la sucesión del dicho Sr. Baettenhaussen.

"(b) Que, aun asumiendo que existieren bienes pertenecientes al dicho Sr. Baettenhaussen, sujetos a administración por las Cortes de Puerto Rico, la única corte que pudo haber nombrado un administrador judicial es la Corte de Distrito de Arecibo, y no la de San Juan.

"2. Que, dadas las circunstancias del caso, la Corte de Distrito de San Juan erró al nombrar a un no residente como administrador judicial."

La primera y principal cuestión que nos presenta este caso es decidir si el difunto Baettenhaussen dejjó propiedad alguna en Puerto Rico para recobrar la cual se pueda nombrar un administrador judicial auxiliar. Sostiene la parte peticionaria, que el derecho de acción de un acreedor no garantizado para solicitar la anulación de un supuesto traspaso de una propiedad hecho por su deudor con el alegado

propósito de defraudar a sus acreedores, no constituye de por sí un gravamen o interés en la propiedad así traspasada de tal manera que una corte pueda proceder a nombrar un administrador para su ejecución o cobro. Sostienen los interventores la tesis contraria.

De acuerdo con el artículo 556 de nuestro Código de Enjuiciamiento Civil, edición de 1933, la petición en que se solicita la administración judicial de los bienes de un finado ". . . se presentará en la corte de distrito que tuviere jurisdicción en la última residencia de la persona finada *o lugar donde radica la mayor parte de sus bienes,* y en ella se hará constar bajo juramento:

"(1) La muerte de la persona finada.
"(2) *       *       *       *       *       *       *
"(3) *       *       *       *       *       *       *
"(4) *       *       *       *       *       *       *
"(5) Que la persona finada dejó bienes sujetos a partición con expresión de la cuantía y naturaleza de dichos bienes." (Bastardillas nuestras.)

La muerte de la persona o la presunción de muerte que de su desaparición se deriva en casos de ausentes, su residencia al fallecer, o en la alternativa, que la persona finada dejó bienes sujetos a partición, son hechos jurisdiccionales que deben aparecer en la petición en que se solicita la administración de esos bienes, porque de otro modo el nombramiento que de un administrador se hiciera sería *coram non judice* y por tanto nulo.

"HECHOS JURISDICCIONALES.—Para que la concesión de cartas de administración sea válida deben' existir dos hechos jurisdiccionales: 1. El fallecimiento del causante; y 2, Éste debe haber residido en el Condado en la fecha de su muerte, o haber dejado bienes dentro del mismo. Ambos hechos deben coexistir antes de que se pueda decretar la administración: *Beckett* v. *Selover,* 7 Cal. 215, 68 Am. Dec. 237; *Haynes* v. *Meeks,* 10 Cal. 110, 70 Am. Dec. 703; *Van Giessen* v. *Bridgford,* 83 N. Y. 348; *Burnett* v. *Meadows,* 7 B. Mon. 277, 46 Am. Dec. 517." 81 Am. St. Rep. 536.

Sobre este mismo extremo véase el resumen que de la jurisprudencia se hace en 11 R.C.L. página 84, así:

"HECHOS JURISDICCIONALES EN GENERAL.—Para hacer válida la concesión de cartas de administración la opinión de que ciertos hechos jurisdiccionales deben existir está generalmente aceptado. Estos hechos son que la persona sobre cuyos bienes se concede la administración ha fallecido, y que en la fecha de su muerte era un residente del condado dentro del cual se decreta la administración, o si no fuera residente que él dejó bienes dentro de tal condado. Se ha dicho que el hecho de la muerte del intestado y el de su residencia dentro del condado son hechos fundamentales sobre los cuales deben descansar todos los procedimientos de administración subsiguientes, y que si el intestado no era un residente del estado en la fecha de su muerte, y no dejó bienes en el estado, ni se trajeron a éste ningunos posteriormente, no se ha conferido jurisdicción a la corte para conceder cartas de administración dentro de ningún condado del estado, y tales cartas, si fueren concedidas, son *coram non judice* y nulas. Los bienes constituyen un hecho jurisdiccional solamente en ausencia de residencia legal en el condado."

De la petición radicada por Lina E. Grey, Julius A. Roth, Kurt W. Baettenhaussen y Guaranty Trust Company ante la Corte de Distrito de San Juan, solicitando que se nombrase a George H. Emerson administrador judicial de los bienes de Theodore Baettenhaussen en Puerto Rico, aparecen alegados afirmativamente los siguientes hechos:

"(1) Que el supuesto acreedor Theodore Baettenhaussen murió domiciliado fuera de Puerto Rico, en Nueva York.

"(2) Que el supuesto deudor no está domiciliado en Puerto Rico, ni vive en Puerto Rico.

"(3) Que la supuesta reclamación que tiene el acreedor contra el deudor se originó de unos préstamos hechos en Nueva York (o por lo menos fuera de Puerto Rico), evidenciados por ciertos pagarés librados en Nueva York (o por lo menos fuera de Puerto Rico).

"(4) Que la única relación que pudiera tener el caso con Puerto Rico surge del hecho de que en enero 21 de 1933, el supuesto deudor Borda, siendo dueño de ciertos bienes inmuebles en Puerto Rico, traspasó su interés en esos bienes, por medio de un documento otorgado en Nueva York; y que, según alegan los herederos del acreedor, dicho traspaso fué en fraude de su causahabiente."

Como en la petición se ha hecho constar la muerte de Theodore Baettenhaussen y el acaecimiento de ésta fuera de Puerto Rico, es preciso determinar si los créditos contra Charles Borda Klugkist, de que Baettenhaussen era dueño al morir, constituyen *bienes en Puerto Rico* a los efectos de autorizar el nombramiento de un administrador judicial.

El Tribunal Supremo de los Estados Unidos, en el caso de *Wyman* v. *Halstead,* 109 U. S. 654, 656, se expresó así:

"Está bien sentada la regla general de derecho, que a los efectos de decretar una administración todas las deudas contractuales no garantizadas son bienes (*assets*) en el domicilio del deudor; y que la localidad de tal deuda para este propósito no está afectada por el hecho de que se haya dado una letra de cambio o pagaré por dicha deuda, porque ni la letra ni el pagaré alteran la naturaleza de la deuda, sino que simplemente son evidencia de ella, y por consiguiente la deuda constituye bienes en el sitio donde vive el dudor sin importar el sitio donde se halle el documento o donde sea pagadero. (Citas.)"

El anterior caso se cita con aprobación en *Baker* v. *Baker, Eccles & Company,* 242 U. S. 394, 400.

Sentados como hechos fundamentales que los bienes relictos al fallecimiento de Baettenhaussen consisten en simples pagarés no garantizados otorgados a su favor por Borda; que el intestado residió y su representante y su deudor residen fuera de y no se han sometido en manera alguna a la jurisdicción de los tribunales de Puerto Rico; y que la única propiedad tangible en que pudiera tener algún interés el deudor Borda es un condominio de una tercera parte indivisa en una finca ubicada en el Distrito Judicial de Arecibo, cuya participación se alega haber sido traspasada por Borda para defraudar a sus acreedores, formularemos ahora las dos cuestiones de cuya resolución depende nuestra decisión en el presente caso.

1ª ¿Tiene el tenedor de un pagaré no garantizado algún otro derecho substantivo que no sea el de exigir que la obligación le sea satisfecha a su debido tiempo?

2ª ¿Tiene el tenedor no residente de un pagaré de tal naturaleza, sobre el cual no ha recaído sentencia, título o gravamen alguno sobre la propiedad de su deudor también no residente, que pueda servir de base para una resolución en el sentido de que el tenedor de dicho pagaré, muerto fuera de Puerto Rico, dejó bienes cuyo *situs* está en Puerto Rico y que pueden ser objeto de administración judicial?

La jurisprudencia que hemos examinado nos obliga a contestar ambas cuestiones en la negativa.

En el caso de *Pusey & Jones Co.* v. *Hanssen,* 261 U. S. 491, 67 L. ed 763, el Tribunal Supremo Federal, por voz del Juez Asociado Sr. Brandeis, se expresó así:

". . . Con frecuencia se nombra un síndico a solicitud de un acreedor garantizado que teme que su garantía pueda ser menoscabada. (Citas.) Con frecuencia se nombra un síndico a petición de un acreedor por sentencia que ha agotado su remedio legal. (Citas) Pero un simple acreedor contractual no garantizado no tiene, en ausencia de un estatuto, derecho substantivo alguno, legal o equitativo, en o sobre la propiedad de su deudor. Esto es verdad sea cual fuere la naturaleza de la propiedad, y aun cuando el deudor sea una corporación insolvente. El único derecho substantivo de un simple acreedor contractual es el de que se le pague su deuda a su debido tiempo. Su derecho adjetivo existe, ordinariamente, en la ley. Él no tiene derecho alguno en equidad hasta que haya agotado su remedio legal. Después que la orden de ejecución de una sentencia obtenida en ley ha sido devuelta insatisfecha, entonces él puede proceder en equidad por medio de una demanda de nulidad (*creditors' bill*). (Citas.) Por medio de tal demanda él puede remover cualquier obstáculo que impida que su sentencia en ley sea satisfecha; o puede alcanzar propiedades de naturaleza equitativa; o puede proteger provisionalmente la propiedad de su deudor en contra del mal uso o deterioro, por medio de un *injunction* o de un síndico."

Convenimos con los interventores en que el derecho de acción que la ley concede a un acreedor para solicitar la nulidad de un traspaso hecho por el deudor con el propósito de defraudarle es *un derecho de propiedad;* pero no podemos convenir en que sea un derecho sobre una determinada pro-

piedad del deudor. Como *chose in action* es y debe ser considerado como un derecho de propiedad, mas no puede ser considerado como un derecho *in rem,* porque la mera tenencia de un pagaré no garantizado no confiere al tenedor derecho, título o gravamen alguno sobre las propiedades de su deudor, ni aun sobre aquellas que éste hubiese traspasado en fraude de sus acreedores. Asumiendo que Borda no hubiese hecho el traspaso que se dice hiciera fraudulentamente, ¿tendría el representante de Baettenhaussen acción alguna *in rem* contra el condominio de Borda, que pudiera servir de base para la alegación de que Baettenhaussen dejó bienes en Puerto Rico sujetos a administración judicial? Seguramente que no. El representante del finado Baettenhaussen estaría obligado en ese caso a demandar a Borda en cobro de los pagarés, incoando su demanda en el domicilio del deudor, por tratarse de una acción personal para hacer efectivas obligaciones que tienen su *situs* en el lugar del domicilio del deudor. Y después de obtener una sentencia a su favor, el representante legal del finado podría, en caso de no encontrar bienes para hacerla efectiva, hacer uso del remedio o derecho adjetivo adicional que la ley le concede para pedir la nulidad de cualquier traspaso fraudulento que hubiera hecho el deudor. Esa acción de nulidad seguramente podría ser entablada también en el domicilio del deudor por tratarse de una acción o remedio de naturaleza personal que no confiere ni crea derecho o título alguno *in rem.*

Es cierto que la jurisprudencia en esta jurisdicción no requiere como condición previa para poder entablar la acción rescisoria que el acreedor tenga su crédito reconocido por sentencia y permite que en una misma acción se alegue y se pruebe la condición de acreedor y se pida la rescisión de un traspaso fraudulento. *Sucesión Almazán* v. *López,* 20 D.P.R. 537.

El propósito fundamental de nuestra jurisprudencia es facilitar al acreedor los medios o procedimientos más rápidos y expeditos para el cobro de su crédito, permitiéndole conso-

lidar en una sola demanda la acción en cobro de dinero, que es la principal, y la acción rescisoria, que es una acción subsidiaria. Artículos 1243 y 1246 Código Civil, ed. 1930. Tanto el Código como la jurisprudencia reconocen como *derecho adjetivo* de un simple acreedor el de demandar para establecer su crédito, y al mismo tiempo pedir la remoción de cualquier obstáculo que pueda impedir se dé efectividad a la sentencia que se dicte a su favor. Pero ni el uno ni la otra conceden derecho substantivo alguno al acreedor sobre los bienes del deudor que pueda ser considerado como propiedad ubicada en el sitio donde radican tales bienes.

De acuerdo con nuestra jurisprudencia, en una acción de esta naturaleza debe alegarse y probarse: (*a*) que el demandado es realmente deudor del demandante; (*b*) que el demandado enajenó sus bienes en fraude de su acreedor; (*c*) que el demandante ha sido perjudicado por tal enajenación; y (*d*) que el demandante no tiene otro recurso legal para obtener la reparación del perjuicio sufrido, que pedir la rescisión del contrato de enajenación. *Sucesión Almazán* v. *López*, supra. De lo expuesto se ve claramente que aun cuando la consolidación de las dos acciones está permitida, la prueba de la existencia de la obligación sigue siendo una condición precedente a la concesión de los dos remedios que la ley provee, o sea (*a*) sentencia condenando al demandado al pago de la obligación, y (*b*) sentencia declaratoria de la nulidad del traspaso hecho por el deudor demandado.

Las precedentes consideraciones nos llevan a la conclusión de que el finado Theodore Baettenhaussen no dejó bienes que puedan ser objeto de una administración judicial dentro de la Isla de Puerto Rico.

Existe una razón adicional que a nuestro juicio es por sí sola suficiente para la revocación de la resolución recurrida y para la anulación del nombramiento de George H. Emerson como administrador judicial auxiliar. Nos referimos a la alegada falta de jurisdicción de la Corte de Distrito de San Juan para hacer tal nombramiento.

Ya hemos visto qu'e el *situs* de la deuda de Borda a Baettenhaussen, representada por simple pagarés no garantizados, es el domicilio del deudor Borda, quien reside fuera de la jurisdicción de Puerto Rico. Y ya ha sido resuelto por la Corte de Circuito de Apelaciones, en *Domenech* v. *United Porto Rican Sugar Co.*, 62 Fed. (2d) 552, 555, que una propiedad así situada está fuera de la jurisdicción fiscal de la Legislatura de Puerto Rico.

Ahora bien, aun cuando asumiéramos que la ley en este caso confiere, como pretende la parte interventora, al tenedor actual de los pagarés, o sea al Guaranty Trust Company of New York, en su carácter de albacea testamentario, algún título, derecho o interés sobre la propiedad que se dice fué traspasada por el deudor en fraude de acreedores, tendríamos que sostener que el *situs* de dicho título, derecho o interés es el Distrito Judicial de Arecibo, que es el distrito dentro del cual radica la Hacienda "Esperanza," que es la propiedad sobre la que se pretende existe un derecho *in rem* para someterla al pago de las obligaciones de un deudor ausente.

Nuestro Código de Enjuiciamiento Civil, después de enumerar las personas autorizadas para solicitar la administración judicial de los bienes de una persona finada, dispone:

". . . La petición se presentará en la Corte de Distrito que tuviere jurisdicción en la *última residencia de la persona finada o lugar donde radica la mayor parte de sus bienes,* y en ella se hará constar bajo juramento: etc." (Bastardillas nuestras.) Art. 556, Cód. Enj. Civ., ed. 1933.

No existe en nuestras leyes disposición alguna que expresamente autorice el nombramiento de un administrador judicial auxiliar, para la administración de bienes de una persona muerta fuera de Puerto Rico, con subordinación a la administración principal decretada por el tribunal competente en el domicilio del testador o intestado. Sin embargo, esta Corte Suprema, inspirándose en "los principios de cortesía tomándolos en relación con dichas secciones 25 y 7 del Código Civil" resolvió en *Sánchez et al.* v. *Soto Nussa,* Juez

de Distrito, 14 D.P.R. 442, que procedía el nombramiento de un administrador judicial auxiliar de los bienes de Sánchez, para que dicho administrador pudiese reclamar para beneficio de los herederos ciertos bienes inmuebles que el testador poseía en Puerto Rico al ocurrir su muerte y que estaban ocupados ilegalmente por una tercera persona. La petición en dicho caso fué radicada ante la Corte de Distrito de Mayagüez, por ser el de Mayagüez el distrito judicial dentro del cual radicaban los bienes relictos cuya posesión y derecho de propiedad se reclamaban.

Creemos que no debe irse más allá de lo que fuimos en el citado caso de *Sánchez et al* v. *Soto Nussa,* supra. La petición para el nombramiento de un administrador judicial auxiliar debe gobernarse por las prescripciones de los artículos 556 a 559 del Código de Enjuiciamiento Civil (ed. 1933) y por consiguiente debe ser presentada en la Corte de Distrito que tuviera jurisdicción en la última residencia de la persona finada o en el lugar donde radiquen los bienes que han de ser administrados.

Examinemos los casos citados en apoyo de la opinión de la mayoría.

En *Sánchez* v. *Soto Nussa,* 14 D.P.R. 442 (mayo 27, 1908), se resolvió por primera vez en Puerto Rico que aunque los estatutos del país no lo autorizan expresamente, por razón de *comity* (cortesía) puede nombrarse un administrador auxiliar, *ancillary administrator.* En aquel caso se alegó que existían bienes inmuebles en Puerto Rico pertenecientes al finado, aunque en realidad estaban siendo poseídos por persona distinta del finado a la fecha de su muerte. Si bien es verdad, como se dijo por la corte inferior, el propósito del nombramiento era litigar, sin embargo, allí los representantes del finado alegaban tener un derecho de propiedad sobre la finca, distinguiéndose así del caso de autos en que se trata de cobrar ciertos pagarés y no se reclama derecho real alguno sobre el inmueble. Allí había un derecho real en

favor de los representantes del finado, aquí se trata de una acción meramente personal.

En *Pueblo* v. *Alcaide,* 29 D.P.R. 171, se trata del derecho de propiedad y se cita el caso de *Gleason* v. *Thaw,* 236 U. S. 558, en el que se hace un estudio del concepto de "propiedad." Se resuelve en este último caso que el derecho a cobrar honorarios no es propiamente un derecho de propiedad, pero sin embargo para los fines de su protección se considera como propiedad.

Sobre este punto no existe controversia, pues todos estamos de acuerdo en que un *"chose in action,"* o sea una causa de acción puede considerarse como propiedad para los fines de protección.

Las citas de 50 Corpus Juris, 740 y 763, no dan luz alguna en este asunto, pues ellas sólo se refieren al amplio concepto jurídico de la palabra "propiedad," la que según las citas incluye las causas de acción (*choses in action*) las que califica como bienes muebles (pág. 763).

El caso de *Ree's Estate,* 212 P. 234, no sostiene la contención de la mayoría y más bien sostiene la del suscribiente. En este caso el administrador provisional había obtenido sentencia dejando sin efecto ciertos traspasos sobre fincas que alegaba pertenecían a la sucesión. Después de obtenida sentencia y mientras estaba pendiente de apelación, se solicitó el nombramiento de un administrador general. La corte de *probate* expidió el nombramiento, contra cuya resolución se estableció recurso, alegándose, como en el caso de autos que no existía propiedad que pudiese administrar y por consiguiente no procedía el nombramiento de un administrador general. Se resolvió: "La reclamación del derecho a cancelar las dos escrituras de septiembre de 1919 constituía propiedad que podía servir de base a una administración (*Estate of Daughaday,* 168 Cal. 63, 141 P. 929); y dejando a un lado la cuestión de si estrictamente tal derecho es un bien inmueble (*real property*) es evidente que en el presente caso la corte de testamentarías como tal lo consideró. . . No debe

perderse de vista que la sentencia anulando los traspasos había sido dictada dos meses y medio antes de que se expidiese la orden que motiva esta apelación. Esta circunstancia probablemente indujo a la corte a valorar en $10,000 el derecho en litigio en ambos casos, las alegaciones de Lewellyn Rees sosteniendo que la propiedad misma que fué objeto de la venta tenía un valor de $75,000 a $100,000. Como la reclamación del derecho a anular los traspasos era la única propiedad que la corte pudo tener en mente al llegar a sus conclusiones de hecho, la corte seguramente tuvo en mente dicha propiedad. Esta conclusión está sostenida por la prueba. . . Como hemos visto, la corte sentenciadora había pronunciado su sentencia anulando los traspasos antes de que se hiciese el nombramiento del apelado. Esta circunstancia bien pudo inducir a la corte de testamentarías a opinar que el derecho a cancelar las escrituras era tangible y valuable a pesar de que existía todavía el derecho de apelación. La corte indudablemente entendió que la rendición de la sentencia sacaba la reclamación de la categoría designada por la Corte Suprema en su opinión en *Estate of Daughaday,* en que se expresó así:

'No está dentro de la contemplación de la ley que la mera alegación de una reclamación no obstante cuán visionaria e insubstancial sea, permita la expedición de cartas de administración dando así una especie de sanción judicial a pretensiones infundadas.'

Además, la corte le había dado ya una especie de sanción judicial a la reclamación a virtud del nombramiento de administradores especiales para que la reclamaran, pues los administradores especiales sólo pueden nombrarse para *collect and take charge of the estate of the decedent . . .* y para ejercitar tales poderes como fueren necesarios para la preservación de la herencia (*estate*). Habiendo obtenido el administrador especial sentencia en la Corte Superior, la sección de testamentaría (*probate department*) de la corte, ejercitó correctamente su discreción al sustituir la administración especial por una general.''

En el caso de autos no existe sentencia! alguna que anule el traspaso. Además, en el caso de Rees se alegaba que la propiedad pertenecía al "estate," mientras que en el presente caso los demandantes no reclaman ningún derecho especial sobre la propiedad, sino el derecho general a hacer efectivo su crédito sobre bienes del deudor.

El caso de *Loaiza* v. *Levy,* 24 P. 707, tampoco da luz alguna en este asunto. La cuestión envuelta en dicho caso era la siguiente: Ciertos individuos residentes en Méjico y dueños de ciertos terrenos mineros, mediante cierto fraude que practicaron en relación con muestras (*samples*) que tomaron de dichas minas, consiguieron que los expertos en minas, creyendo que las muestras eran legítimas y no habían sido alteradas, diesen un informe del que resultaba que el valor de dichos terrenos era mucho mayor del que realmente era. En esas condiciones, consiguieron que dos corporaciones de Inglaterra, celebraran con ellos un contrato de compraventa de las minas, por precio de $1,575,000, de los cuales pagaron los compradores en California la cantidad de $710,000 en oro, y por el resto de $865,000 dieron un pagaré con interés al 6 por ciento anual garantizado con hipoteca sobre bienes inmuebles radicados en San Francisco, California. Al advertir los compradores el fraude de que fueron víctimas demandaron en California, solicitando la rescisión del contrato y obligándose a su vez a devolver a los vendedores todo cuanto de ellos habían recibido por virtud del contrato. Se impugnó la jurisdicción de la corte por razón de que ni los demandantes ni los demandados con excepción de uno (Loaiza) eran residentes de California.

Sostuvo la corte que si bien demandantes y demandados residían fuera de California, sin embargo, el contrato se había celebrado en California, existía propiedad que sería afectada por la sentencia en California, y que habiendo los demandantes recurrido a los tribunales de California se habían ellos sometido a sus tribunales, los que podían imponerles condiciones en su sentencia que deberían cumplir para poder hacer

efectivos sus derechos, pudiendo, desde luego, obligarlos como parte de la sentencia a devolver el título de las propiedades que de los demandados habían obtenido en Méjico.

La acción en dicho caso era una acción *in rem.* No se trataba de una mera reclamación de una deuda.

El caso de *Blodgett* v. *Silberman,* 277 U. S. 1 (72 L. Ed. 749), se contrae al poder del estado donde fallece una persona para imponer contribución de herencia sobre bienes intangibles incluyendo *choses in action* radicados en otros estados. Se aplicó la regla de *mobilia sequutur personam* y se sostuvo que el Estado de Connecticut, que era el del domicilio del finado, tenía jurisdicción para imponer contribución aunque se hubiesen expedido pagarés o cualquiera otra evidencia de la deuda y tal evidencia estuviese en Nueva York (pág. 10). No hubo en este caso nombramiento de administradores o de *receiver.* Era una mera cuestión contributiva.

El caso de *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193 (80 L. Ed. 1143) trataba de la imposición de contribuciones sobre bienes intangibles de una corporación por el estado donde dicha corporación mantiene su negocio, estado distinto de aquel en que radica su oficina principal. Se sostuvo que tal contribución no viola la cláusula del *due process of law.*

En 11 R.C.L. 72, sec. 68, se sostiene que un administrador judicial puede ser nombrado aun cuando la única propiedad del difunto consista de un *chose in action.*

Sin embargo, hemos estudiado los casos que bajo esta sección se citan, tanto en R. C. L. como en el Suplemento, y todos se refieren a casos en que el *chose in action* consiste en una causa de acción por daños por la muerte ilegal del finado y en los cuales existe estatuto que autoriza al administrador judicial a entablar la acción, por lo que los tribunales han dicho que el hecho de autorizar la legislatura al administrador para entablar la acción, demuestra que fué la intención legislativa que el administrador fuese nombrado para así poder dar cumplimiento al estatuto. Véanse a este

efecto: *In re Post,* 104 Atl. 652 (N. J.), donde se siguió la acción bajo la ley titulada "Death Act, An Act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default." *Ghilain* v. *Couture,* 65 A.L.R. 553 (N. H. 1929).

En *Appeal of Jenkins,* 58 N. E. 568 (Indiana 1900), la causa de acción consistía en una por daños y perjuicios por la muerte del causante. Fué muerto mientras se hallaba detenido en la cárcel por el *sheriff* Henry Bushing y una turba *(mob)* entró en la cárcel y lo mató. Se sostuvo que el *sheriff* tenía la obligación de ejercitar cuidado razonable para proteger la vida y la salud de los presos.

En *Davis* v. *Guarineri,* 4 Am. St. Rep. 548 (Ohio 1887), Nicola Guarineri fué nombrado administrador de los bienes de la difunta Angela Guarineri, su esposa. Estableció esta acción de daños y perjuicios contra el droguista William P. Davis, por haber causado la muerte de dicha señora al venderle aceite de almendras amargas, que es venenoso, por aceite de almendras dulces, que fué lo que Guárineri le pidió para darle un purgante a su esposa. En el caso no se discute si la finada dejó otros bienes ni se levantó la cuestión de si procedía o no el nombramiento de administrador.

El caso de *Matter of Warburg,* 129 Misc. (N. Y.) 832, no es autoridad para el caso presente. Es verdad que allí se dijo (pág. 834) que la Corte de Surrogate de New York tiene jurisdicción para considerar una petición de nombramiento de administrador auxiliar, aunque la propiedad que en New York tenía la Sucesión era una deuda que le debía cierta corporación residente en el Estado de New York. En el caso de autos el deudor Borda no reside en Puerto Rico.

De los autos del presente caso aparece que el testador Baettenhaussen tenía su domicilio y residencia y que falleció en Nueva York; que los pagarés otorgados a su favor por Borda no tienen *situs* dentro de la Isla de Puerto Rico; y que el único alegado derecho o título sobre propiedad que pudiera ser objeto de administración judicial se refiere a una

propiedad inmueble radicada dentro de la jurisdicción de la Corte de Distrito de Arecibo. La Corte de Distrito de San Juan, aun cuando tiene competencia para decretar una administración judicial en los casos en que se cumplen los requisitos previstos por la ley, carecía a nuestro juicio de jurisdicción para dictar la resolución recurrida.

Estoy autorizado para hacer constar que el Juez Asociado Sr. De Jesús está conforme con esta opinión.